**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SAN ANTONIO PORTLAND CEMENT COMPANY, Respondent.**

No. 79–2576
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 15, 1980.

Rehearing Denied April 8, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Elliott Moore, Deputy Associate Gen. Counsel, James Callear, N. L. R. B., Washington, D.C., for petitioner.

Edwin H. Benn, Chicago, Ill., for Cement, Lime & Gypsum Workers Intern. Union, AFL–CIO.

Stephen B. Rubin, Chicago, Ill., for intervenor.

Fulbright & Jaworski, Brian S. Greig, Robert S. Bambace, Houston, Tex., for respondent.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

PER CURIAM:

This case comes before this Court upon application by the National Labor Relations Board ("Board") for enforcement of its order against San Antonio Portland Cement Company ("Company") which found the Company in violation of Section 8(a)(5) and (1) of the National Labor Relations Act, as amended, for refusing to bargain with the United Cement, Lime & Gypsum Workers, International Union ("Union"). The Union, after the representation election, had been certified by the Board as the exclusive bargaining representative of the Company's employees in the appropriate bargaining unit. The Company challenges the Order of the Board on the grounds that supervisory involvement on behalf of the Union rendered the election results invalid. We find from the record there is substantial evidence to support the Board's order, and it is therefore enforced.

On March 17, 1978, based on a stipulation executed by the parties, an election was held in the production and maintenance unit of the Company. The Union won. The Company timely filed three objections to the election, only one of which the Company now urges. That objection is that

employees Gregory Fuentes, Joe Fernandez and Curtis New are all supervisors, and all three coerced and intimidated employees on behalf of the Union prior to the election.

A Hearing Officer, after receiving testimony concerning this objection, found in his Report that neither Fuentes nor Fernandez was a supervisor, and that New's conduct did not impair the employees' freedom of choice in the election. He recommended that the Company's objection be overruled. The Board adopted the Hearing Officer's findings and recommendations.

■ A recurrent issue in contests of representation elections is whether a particular employee is a "supervisor".[1] This Court in considering such a question gives great weight to the Board's determination, since the Board, in light of its expertise, is uniquely capable of measuring the subtle gradations of authority which delineate supervisory from non-supervisory personnel. *N.L.R.B. v. Handy Hardware Wholesale, Inc.,* 542 F.2d 935 (5th Cir. 1976); See also *N.L.R.B. v. Hearst Publications, Inc.,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), and *N.L.R.B. v. Houston Natural Gas Corp.,* 478 F.2d 467 (5th Cir. 1973), *cert. denied* 414 U.S. 1067, 94 S.Ct. 575, 38 L.Ed.2d 472. Mindful of the weight to be given the Board's determinations, we turn to the status of Fuentes and Fernandez.

### A. Status of Gregory Fuentes.

■ The Company maintains on its premises, but apart from its plant, a section known as the Village, consisting of approximately 80 houses offered to the employees on a space available basis. Fuentes, who is classified as Carpenter & Utility Leadman, is part of a crew of three or four men, which is responsible for the maintenance of the Village. The crew reports to the Plant Superintendent Canchola each morning, at which time they pick up a work sheet cover-

ing the day's work. Although the men work as a crew, each possesses a skill in some specific area of construction. For example, one is the plumber, one is the painter and Fuentes is the carpenter. The crew usually divides up the work based on their skills, and as the work progresses, a member of the crew marks off the job on the sheet. Fuentes is the highest paid member of the crew by 13 or 14 cents. He otherwise receives the same benefits as other hourly paid employees. His job consists of manual labor.

Fuentes testified that he had no supervisory authority and denied that he had any authority to hire or fire employees, grant wage increases, lay off or recall employees. He did recount that he once told management that a certain member on the crew was a good worker, and that this crew member later received a wage increase. The record, however, failed to establish that the wage increase was the result of Fuentes' recommendation. Fuentes also explained that during the preparation of the Christmas party, he would submit to Canchola names of people he would like to have assigned to him on the project, but that Canchola would strike or add names as Canchola desired. Fuentes also testified that at one time he requested a certain employee for a job, which request was granted.

The Company, to establish Fuentes' supervisory status, placed Manuel Galindo, the Personnel Manager, on the stand. Galindo testified that Fuentes did have authority to assign jobs to the men on the crew and to order laborers to assist the crew in their work in the Village. The Hearing Officer, however, noting that Galindo was not as familiar with Fuentes' job as Fuentes himself, expressly credited Fuentes' testimony over that of Galindo, and found that Fuentes did not possess or exercise authority to hire, fire, lay off, re-

---

[1]. Section 2(11) of the Act, 29 U.S.C. § 152(11) defines a "supervisor" as:

. . . [A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other

employees, or responsibility to direct them, or to adjust their grievances, or effectively recommend such action, if in connection with the foregoing the exercise of such authority is not of merely routine or clerical nature, but requires the use of independent judgment.

call, promote or discipline employees, and also that Fuentes did not possess authority to assign or direct work of others except in routine matters requiring little or no independent judgment. The Board adopted these findings.

We find that there is substantial evidence in the record as a whole to support the Board's finding that Fuentes was not a supervisor.

### B. Status of Joe Fernandez.

The Company operates on a 24 hour basis a power plant with 12 engines to supply electricity for its operation. Anywhere from 17 to 21 employees work in this plant. Chief Engineer Efren Charles is in charge of the power plant, and Assistant Chief Engineer Curtis New is next in charge.

■ Fernandez, who has the title Chief Diesel Engineer Operator, stated in testimony before the Hearing Officer that he possesses no supervisory authority and has no authority to hire, fire, lay off, promote, grant time off, issue warnings, or discipline employees. He stated he does not participate in preparing the work schedules of the powerhouse employees. His duties are to take care of four large diesel engines in the plant and to assist operators of machines other than his four large diesels in starting their machines and getting them to run normally. All of his time is spent on manual labor, performing tasks such as checking lubricators and oil levels, cleaning the generator pits and oil spills, assisting the maintenance crew, and doing other minor clean up chores. On occasion, operators have called Fernandez for advice while he was home, but the Hearing Officer found that he lacks authority to direct operators. Fernandez does have authority to make an on-the-spot decision to shut down an engine when it is in extreme danger of damage, but all operators and mechanics have this authority.

The Company relies on the testimony of Galindo who stated that Fernandez does have authority to prepare a rotating crew schedule, to give overtime, to leave instructions for the night shifts, and to call employees in if there is an emergency.

The Hearing Officer found that Fernandez did not possess or exercise the authority to direct the work of other employees. His basic responsibility is the maintenance of the diesel engines. The Board adopted these findings. We find that there is substantial evidence in the record as a whole to support the Board's finding that Fernandez was not a supervisor.

### C. Pro-Union Activity of New.

■ The only pro-union activity by New alleged by the Company is that on the night before the election, he wore a Union button while attending a Union meeting adjacent to a Company picnic. No other activity or pressure is alleged by the Company.

While it has been stated that supervisory pressure upon employees in the selection of a bargaining representative is coercive and that it is not necessary to prove that such pressure and coercion affected the result of the election, *Turner's Express, Incorporated v. N.L.R.B.*, 456 F.2d 289 (4th Cir. 1972), this Circuit has clearly held that not just any advocacy of a union by a supervisor rises to the level of supervisory pressure or coercion. The mere statement of personal preference by a supervisor is not coercive. *N.L.R.B. v. Alamo Express, Inc.*, 430 F.2d 1032 (5th Cir. 1970). In upholding the Board's bargaining order grounded on an authorization card majority, we have held there is no supervisory taint so long as nothing in the words, deeds, or atmosphere of a supervisor's request for authorization cards contain the seeds of potential reprisal, punishment, or intimidation. *N.L.R.B. v. WKRG–TV, Inc.*, 470 F.2d 1302, 1316 (5th Cir. 1973).

The only fact in this case from which we are urged to infer supervisory coercion is the fact that one supervisor wore a Union button at a Union meeting on the eve of the election. This fact is very similar to the expression of personal preference which *Alamo Express, Inc., supra,* found not to be coercive.

*Turner's Express, supra,* cited by the Company, is distinguishable. In *Turner's*

*Express,* the supervisors were responsible for bringing in the Union, had interrogated employees as to whether they would sign authorization cards, had told some employees they would be "crazy" not to sign the authorization cards, and had warned some employees that if they voted against the Union, things were going to get tough and those employees would "start paying for it" after the election.

*N.L.R.B. v. Lamar Electric Membership Corporation,* 362 F.2d 505 (5th Cir. 1966), is also distinguishable. In *Lamar Electric,* not only did a supervisor join a Union meeting on the eve of an election, but there was also evidence that he had attended a previous Union meeting, that he had brought the crews into the plant earlier than usual on the day of the election, that he had attended a Union celebration on the night of the election, that he had made threats of economic and physical harm to one employee who had voted against the Union on the day after the election, and that he had stated two days before the election: "the only way we're ever going to have anything is to have a union because the board isn't going to do a thing for us and if we get anything we'll have to get it for ourselves." This Court held that this evidence made out a prima facie case of supervisory coercion that required a hearing. Unlike the *Lamar Electric* case, an evidentiary hearing has been held in this case.

In both *Turner's Express* and *Lamar Electric,* the supervisor's acts contained seeds of potential reprisal and intimidation. On the other hand, attending a Union meeting wearing a Union button, without more, does not contain such coercive seeds. The Hearing Officer found that New's wearing the Union button at the Union meeting on the eve of the election failed to coerce the employees.[2] We find substantial evidence in the record as a whole to support this finding.

2. The Hearing Officer also found that New was a "low-level" supervisor, and that his authority extended only over a very insignificant number of total unit employees.

The order of the Board that the Company bargain with the Union is therefore

ENFORCED.