NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MANUFACTURER'S PACKAGING CO., INC., Respondent.

No. 80–1269.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1981.

Decided April 1, 1981.

R. Michael Smith, N.L.R.B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John G. Elligers and Susan S. McDonald, Washington, D. C., on brief), for petitioner.

Thomas P. Gies, Chicago, Ill. (Nancy C. Lee, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., on brief) for respondent.

Before BRYAN, Senior Circuit Judge, PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

The National Labor Relations Board (the Board) has petitioned this court for enforcement of its order directing Manufacturer's Packaging Co., Inc. (the company) to bargain with Local 387, International Union of Operating Engineers, AFL–CIO (the union) upon the union's request, and to take other remedial action, for violating section 8(a)(5) and (1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(5) and (1). We grant enforcement.

## I.

The union was certified as the exclusive bargaining representative of the company's production employees after it prevailed by a vote of 47 to 22 in a Board conducted representation election held on April 27, 1979. The company and the union met several

times prior to the election to discuss the election. Initially, the parties disagreed on the proper bargaining unit: the union felt that the sub-supervisors should be included, and the company contended that they should be excluded. On March 9, 1979, the union and the company stipulated that sub-supervisors should be excluded. The stipulation was approved by the Board's Regional Director.

The company filed a timely objection to the election, contending that it had been tainted by the pro-union activities of certain sub-supervisors. Among the challenged activities were the following: two out of the ten sub-supervisors distributed one union card each to an employee, four wore union buttons, three attended union meetings, one signed a union authorization card, one transmitted an employee's signed union card to another employee, and five made pro-union statements. The evidence shows that many of the sub-supervisors' pro-union statements were made in response to employee inquiries. Furthermore, with the exception of one pro-union comment by a sub-supervisor, all the challenged activity took place prior to the March 9th stipulation which was made a full seven weeks prior to the election.

The Regional Director found the company's objection to the election to be without merit and recommended in his written report that the Board certify the union as the exclusive bargaining agent. The company then filed exceptions to the report requesting either that a hearing be held on its objection or that the election be set aside or both. The Board denied the company's hearing request and adopted the recommendation of the Regional Director that the union be certified as the employees' exclusive bargaining representative. Shortly thereafter the union wrote the company requesting it to bargain with it, and the company refused.

## II.

▮ The question we must resolve is whether the Board's conclusion that the election was not tainted by the sub-supervi-

sors' union activities should be upheld. The burden is on the party objecting to an election to show that the challenged activity has prejudiced the outcome of the election. *NLRB v. Bata Shoe Co.*, 377 F.2d 821, 826 (4th Cir.), *cert. denied*, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). An election will not be set aside unless the conduct of one of the parties has prevented employees from making their collective desires effective. *Schneider Mills, Inc. v. NLRB*, 390 F.2d 375, 378 (4th Cir. 1968). The determination of a valid election is within the sound discretion of the Board, and the Board should be reversed only when it has abused its discretion. *Id.*

The Fourth Circuit has taken a strict approach to extensive supervisory participation in union campaigns. In *Turner's Express, Inc. v. NLRB*, 456 F.2d 289 (4th Cir. 1972), for example, in which the employer petitioned the court to set aside a Board bargaining order, the employer contended that the election should be set aside because of the pro-union activities of two supervisors. Two shop foremen of a trucking outfit, who had significant input into hiring, firing, and wage decisions, had voiced strong support for the union. Their union activities were substantial. They were largely responsible for bringing in a union organizer. They both interrogated employees about whether they intended to sign union authorization cards and to vote for the union, and they warned the employees that if they voted against the union, "things were going to get tough, and they would start paying for it after the election." *Id.* at 292. They told employees that they would get higher wages and more benefits if they voted for the union. Both supervisors also threatened employees who did not support the union. In finding that the supervisors' activities warranted setting aside the election, the court noted that it is not necessary for the employer to prove that supervisor pressure and coercion actually affected the result of the voting. *Id.* at 291.

▮ We do not read *Turner's Express, Inc.* as establishing a per se rule invalidat-

ing a union election if there is any evidence of pro-union supervisory activity. Instead, whether pro-union supervisory activity is sufficient to overturn an election depends on the facts and circumstances of each case. The critical inquiry is whether the supervisors' pro-union activities prevented employees from freely effectuating their collective choice. *Schneider Mills, Inc. v. NLRB*, 390 F.2d 375, 378 (4th Cir. 1968). Employees' free choice is stifled and an election may be set aside if the supervisors' activities "contain the seeds of potential reprisal, punishment, or intimidation." *NLRB v. San Antonio Portland Cement Co.*, 611 F.2d 1148, 1151 (5th Cir. 1980), *citing NLRB v. WKRG–TV, Inc.*, 470 F.2d 1302, 1316 (5th Cir. 1973); *accord, Global Marine Development of California, Inc. v. NLRB*, 528 F.2d 92, 95 (9th Cir. 1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 83 (1976). The activities of the supervisors in *Turner's Express* were obviously egregious, and there is no doubt that they were pervasive, coercive, and upsetting to election conditions.

■ In contrast, the sub-supervisors' pro-union activities in our case were minimal; most occurred more than seven weeks prior to the election and prior to the time that the sub-supervisors were excluded from the bargaining unit. Unlike the situation in *Turner's Express*, there is no evidence in our case that the sub-supervisors initiated or were significantly involved in an offensive strategy to get the company organized. In fact, much of the sub-supervisors' activities, particularly their pro-union comments, were not initiated by the sub-supervisors but were made in response to employee inquiries.

■ The Board's conclusions, based upon inferences drawn from conduct,

should not be set aside unless the conclusions transgress the bounds of reasonableness. *See Catholic Medical Center of Brooklyn and Queens, Inc. v. NLRB*, 620 F.2d 20, 22 (2d Cir. 1980). We hold that there is substantial evidence to support the Board's conclusion that the sub-supervisors' pro-union activities did not taint the election.[1]

Even if we were to adopt a per se rule, the record shows that the company knew of sub-supervisory union activity both prior and subsequent to the date when the sub-supervisors were specifically designated supervisors and made no attempt to disavow it. If an employer is aware of a supervisor's union activities and then stands idly by, the employer cannot subsequently rely on the supervisor's conduct for setting aside a representation election. *NLRB v. Decatur Transfer & Storage, Inc.*, 430 F.2d 763, 764 (5th Cir. 1970). *See NLRB v. Lord Baltimore Press, Inc.*, 300 F.2d 671, 673 (4th Cir. 1962) (advocacy of union by supervisor *unbeknownst to employer* is cause for annulment of election). Because of the company's knowledge of the sub-supervisors' activity, we find it estopped to complain about an unfair election.

We cannot conclude that the Board abused its discretion in refusing to overturn the election. We thus hold that the election was valid, that the company had a duty to bargain with the union, and that its refusal to bargain constituted an unfair labor practice. Accordingly, we grant enforcement of the Board's order.

*ENFORCEMENT GRANTED.*

---

1. The company claims that it was entitled to a hearing on its election objections. A hearing is necessary if there are substantial and material issues of fact relating to the validity of the election. *NLRB v. Bata Shoe Co.*, 377 F.2d 821, 825 (4th Cir.), *cert. denied*, 389 U.S. 917, 88 S.Ct. 238, 19 L.Ed.2d 265 (1967). To be entitled to a hearing, the objecting party must make a proffer of evidence "which *prima facie* would warrant setting aside an election." *Id.* at 826,

*quoting NLRB v. O.K. Van Storage, Inc.*, 297 F.2d 74, 75 (5th Cir. 1961). A hearing is unnecessary when, if all the facts supporting the position of the objecting party were credited, no ground is shown for setting aside the election. 377 F.2d at 826. In light of our conclusion that the supervisors' pro-union activities were minimal, we conclude that the Board did not abuse its discretion in refusing to accord the company a hearing.