## NATIONAL LABOR RELATIONS BOARD, Petitioner,

### v.

## WEHRENBERG THEATRES, INC., d/b/a Melba Theatre and Skyvue Drive-In, Respondents.

### No. 82–1354.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1982.

Decided Oct. 18, 1982.

---

John D. Burgoyne, Asst. Gen. Counsel, Michael F. Messitte, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for N.L.R.B.

Harris, Dowell, Fisher, McCarthy & Kaemmerer, John O. Harris, Michael E. Kaemmerer, Chesterfield, Mo., for respondents.

Before HEANEY and ROSS, Circuit Judges, and HENLEY, Senior Circuit Judge.

PER CURIAM.

This case is before the Court on the application of the National Labor Relations

Board, pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.,* for enforcement of the order it issued against Wehrenberg Theatres, Inc. The Board found that Wehrenberg violated Section 8(a)(3) and (1) of the Act by discharging projectionist Richard Hollander to retaliate against the unit employees for supporting the union[1] and to erode the union's support. It ordered Wehrenberg to cease and desist from the unfair labor practices found, or otherwise violating the employees' section 7 rights. It also directed the company to bargain with the union upon request, to reinstate Hollander with back pay, and to post appropriate notices.

Wehrenberg operates a number of movie theaters in the St. Louis area, including two in DeSoto, Missouri. Wehrenberg had customarily employed three projectionists at these two theaters. In the fall of 1980, the three projectionists were Claude Pierce—the supervisor who has managed the theaters for the past 18 years, Ron Pierce and Richard Hollander.

In October, 1980, Ron Pierce and Hollander signed union authorization cards, and the union demanded that Wehrenberg recognize and bargain with it as the representative of this two-man projectionist unit. Wehrenberg rejected this recognition request in a letter dated November 6, 1980. On November 20, the company—over Claude Pierce's objection—terminated Hollander.

On the foregoing facts, the Board found that Wehrenberg had violated Section 8(a)(3) and (1) of the Act, and issued a bargaining order. Wehrenberg challenges the Board's findings and order on several grounds.

Wehrenberg first claims that the record as a whole does not contain substantial evidence supporting the Board's finding that the company discharged Richard Hollander to retaliate against the employees' support

for the union and to erode the union's majority status. We disagree.

Wehrenberg discharged Hollander in November, 1980, shortly after the union demanded recognition from the company in October. This discharge was the first time in the 18 years that Claude Pierce had managed these theaters that Wehrenberg terminated or laid off a projectionist. Moreover, Hollander's termination plainly eroded union support among the company's projectionists because there were only two employees in the proposed bargaining unit and Hollander was one of them. Finally, although Wehrenberg customarily has employed three projectionists at its two DeSoto theaters, there is record evidence showing that it was left with only two projectionists after it discharged Hollander because the two part-time employees who purportedly were available in fact were not. Claude Pierce testified that there was work for Hollander after he was discharged.

Wehrenberg stipulated that the appropriate bargaining unit here is the projectionists employed at the two DeSoto theaters. The Board found that on October 22, 1980, when the union requested recognition and bargaining, the appropriate unit consisted of only two projectionists—Richard Hollander and Ron Pierce. The employer contends that the union did not have a majority because the unit consisted of four projectionists—namely Keith Singer and Mike Pierce, as well as Ron Pierce and Hollander. Alternatively, if the unit does not include Singer and Mike Pierce, Wehrenberg claims Ron Pierce should be excluded, and thus, the projectionist unit here is an improper one-person unit.

Mike Pierce informed Claude Pierce in late summer, 1980, that he had another job, that he no longer wanted to work in the theaters, and that he would come in only in an emergency. As a result, Claude Pierce hired Hollander in September and Mike Pierce stopped working at the theaters. The record shows that thereafter, Mike

---

1. The union involved here is Local 143, International Alliance of Theatrical Stage Employees & Moving Picture Operators of the United States and Canada. The union, which repre- sents solely projectionists, is the bargaining representative of all of Wehrenberg's other theaters in St. Louis.

Pierce worked only a few nights in September after Hollander was discharged.

Keith Singer worked as a projectionist for Wehrenberg in the summer of 1980, but he left in mid-September to return to college in Columbia, Missouri. He subsequently worked on a few weekends after Hollander's discharge, but Claude Pierce acknowledged that he never knew when Singer might come home for a weekend, and that he had made no arrangements for Singer to work during the school year.

The Board may properly exclude summer and part-time employees from a bargaining unit when they do not work on a regular basis. *See e.g., NLRB v. Boston Beef Co., Inc.,* 652 F.2d 223, 226–227 (1st Cir. 1981). Here, it excluded both Mike Pierce and Singer from the projectionist unit on the ground that they were not employed on a regular basis when the union sought recognition and bargaining in October, 1980. These findings are supported by substantial evidence in the record as a whole and have a reasonable basis in law.

Wehrenberg alternatively argues that Ron Pierce should have been excluded from the projectionist unit. We cannot agree. Wehrenberg argued before the Board that Ron Pierce should be excluded from the unit as a supervisor because he was an assistant manager. The record as a whole shows that Wehrenberg never informed Ron Pierce that he was a supervisor, nor did he exercise supervisory functions. Thus, the Board's conclusion that Ron Pierce should not be excluded was reasonable.

On appeal, Wehrenberg for the first time argues that the Board should have excluded Ron Pierce from the unit because he is supervisor Claude Pierce's son. The company's failure to raise this argument before the Board, leaves this Court without jurisdiction to consider it for the first time on appeal. *E.g., Woelke & Romero Framing, Inc. v. NLRB,* —— U.S. ——, 102 S.Ct. 2071, 72 L.Ed.2d 398, 110 LRRM 2377, 2385 (1982).

Accordingly, the Board's conclusion that the appropriate bargaining unit consisted of Ron Pierce and Richard Hollander was proper.

Wehrenberg next contends that the union authorization cards signed by Ron Pierce and Hollander were invalid because of supervisor Claude Pierce's involvement in seeking union representation. We again cannot agree. Supervisory support for a union will invalidate the union's majority only when the supervisor's activities (1) cause the employees to believe that the supervisors are acting on behalf of the employer and that the employer favors the union, or (2) lead the employees to support the union because they fear future retaliation by the supervisors. *See e.g., Fall River Savings Bank v. NLRB,* 649 F.2d 50, 56 (1st Cir. 1981); *Catholic Medical Center of Brooklyn and Queens, Inc. v. NLRB,* 620 F.2d 20, 22 (2nd Cir. 1980).

There is substantial evidence that neither condition was present here. Although Claude and Ron Pierce contacted the union in October, 1980, there is no showing that the projectionists assumed from this event that Claude Pierce was acting on behalf of Wehrenberg or that Wehrenberg favored the union. Indeed, the projectionists likely drew the opposite conclusion since the Pierces apparently approached the union because Wehrenberg had cut Ron's wages. Moreover, there is no evidence that Claude Pierce coerced or induced either employee to sign the authorization cards. In fact, it was Ron Pierce who gave Hollander the card and explained it to him, and was present when he signed it.

Finally, Wehrenberg challenges the Board's bargaining order. The Board has authority to issue a bargaining order when an employer refuses to bargain with a union that has obtained valid authorization cards from the majority of the employees in an appropriate unit, and commits unfair labor practices that "interfere with the [Board's] election processes and tend to preclude the holding of a fair election." *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 594, 89 S.Ct. 1918, 1929, 23 L.Ed.2d 547 (1969). The issuance of such a bargaining order here was justified.

The record shows that the union had obtained valid union authorization cards from both employees in the employer's two-

man projectionist unit at the DeSoto theater, when it requested recognition and bargaining on October 22. Wehrenberg rejected the union's request on November 6 and shortly thereafter unlawfully discharged projectionist Hollander. That discharge, if permitted to stand, would have completely undermined the basis of the union's demand, and precluded the Board from certifying a bargaining representative for the projectionist unit. We cannot say that the Board acted unreasonably in concluding that Wehrenberg's unfair labor practices have precluded a fair election now, and that a bargaining order is necessary to re-establish the conditions as they existed before Hollander's unlawful discharge and to vindicate the employee's rights under the Act.

For the foregoing reasons, we hold that the Board properly determined that Wehrenberg violated Sections 8(a)(3) and (1) of the Act and ordered appropriate relief. Accordingly, the Board's order is enforced.