No. 83–1187. INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW v. ITT LIGHTING FIXTURES, INC., DIVISION OF ITT CORP., ET AL. C. A. 2d Cir. Certiorari denied.

JUSTICE WHITE, with whom JUSTICE BRENNAN joins, dissenting.

A majority of the employees at two facilities operated by respondent ITT Lighting Fixtures, Inc., chose petitioner International Union as their bargaining representative in an election conducted under the auspices of the National Labor Relations Board in February 1979. ITT contested the election results, challenging the ballots cast by a number of group leaders on the ground that these employees were supervisors and asserting that they had actively favored the union during the election campaign. The Board held that some of the group leaders were supervisors ineligible to vote but concluded that their pro-union activities did not impermissibly interfere with other employees' free choice because they were only minor supervisors with no substantial authority to affect the employment status of other employees. 249 N. L. R. B. 441 (1980). The International Union was certified as bargaining representative, and, when ITT refused to bargain, the NLRB found that the company had committed an unfair labor practice. 252 N. L. R. B. 328 (1980).

The Court of Appeals for the Second Circuit refused to enforce the NLRB's bargaining order, taking the view that the Board had failed to make sufficient findings concerning the precise supervisory authority of the group leaders and to articulate sufficiently its reasons for concluding that the group leaders' pro-union activities did not impair other employees' free choice. 658 F. 2d 934 (1981). On remand, the NLRB made new findings about each of the group leaders, reaffirmed its certification of the International Union, and ordered ITT to bargain. 265 N. L. R. B. 1480 (1982).

The Court of Appeals again refused enforcement, vacated the NLRB's order, and set aside the election. 712 F. 2d 40 (1983). It concluded that the Board had given insufficient weight to group leaders' power to reward employees in determining whether the

group leaders were major supervisors whose involvement in the union campaign was coercive. Although the Board had concluded that the group leaders lacked the power to reward employees, the Court of Appeals examined the record and concluded that five group leaders possessed more than minimal power to reward employees and that "51 employees could possibly have been influenced by the pro-union activity" of these supervisors. *Id.*, at 45. Since the outcome of the election depended on 12 votes, the court concluded that a new election should be held.

In its submission to this Court, the NLRB has taken the position that the Court of Appeals erred in rejecting its finding that ITT's group leaders possessed insufficient authority over other employees to make their pro-union activities coercive but that review is unnecessary in light of the fact-bound nature of the Court of Appeals' decision. In my view, however, the case warrants this Court's attention. Not only did the Court of Appeals select isolated language from the Board's Supplemental Decision and Order in concluding that the Board had failed to consider the group leaders' power to reward employees as evidence of major supervisory power, but also it appears to have enunciated a standard against which pro-union supervisory conduct is to be judged that differs substantially from the standard adopted by its sister Circuits.

There is no doubt that the participation of supervisors in union elections may in some circumstances so undermine employees' freedom of choice as to warrant setting aside the election. In rejecting ITT's challenge to the election, the Board concluded both that the supervisors who expressed their support for the International Union lacked substantial authority over other employees and that the supervisors' pro-union activities were not such as to give rise to a fear of possible retribution. Although the Court of Appeals recognized the need to consider both the degree of supervisory authority and the extent, nature, and openness of pro-union activity, *e. g.*, 658 F. 2d, at 937, it concentrated its analysis almost exclusively on the former. After concluding that some of the group leaders possessed major supervisory authority, the Second Circuit held, without considering the specific conduct at issue, that the group leaders' activity "could possibly have . . . influenced" some employees. Other Circuits that have addressed this question have concluded that "without evidence of any threats, express or implied, [the fact that certain supervisors favor a union] does

not compel a finding of coercion." *Fall River Savings Bank* v. *NLRB*, 649 F. 2d 50, 57 (CA1 1981). See *NLRB* v. *Manufacturer's Packaging Co.*, 645 F. 2d 223, 226 (CA4 1981); *NLRB* v. *San Antonio Portland Cement Co.*, 611 F. 2d 1148, 1151 (CA5 1980); *Global Marine Development of California, Inc.* v. *NLRB*, 528 F. 2d 92, 95 (CA9 1975), cert. denied, 429 U. S. 821 (1976); *Worley Mills, Inc.* v. *NLRB*, 685 F. 2d 362, 365 (CA10 1982). The First Circuit, in fact, appears to have recognized that the Second Circuit's standard differs from its own. *NLRB* v. *Northeastern University*, 707 F. 2d 15, 18 (1983). Although the Court of Appeals disavowed this intention, 658 F. 2d, at 937, it is difficult to escape the conclusion that the rule it announced comes close to a *per se* rule against supervisory involvement in union elections. Perhaps it is correct, but its approach seems at odds with that of the Board and other Circuits. I would grant certiorari.

Accordingly, I dissent.