**WRIGHT MEMORIAL HOSPITAL, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, REGION 17,**
**Respondent.**

No. 84–2025.

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1985.
Decided Aug. 26, 1985.

James G. Baker, Kansas City, Mo., for petitioner.

Abby Simms, N.L.R.B., Washington, D.C., for respondent.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and HARRIS,* Senior District Judge.

McMILLIAN, Circuit Judge.

Wright Memorial Hospital (the hospital) requests review of an order of the National Labor Relations Board (the Board) dated July 6, 1984, in which the Board ordered the hospital to bargain with Service Employees International Union, AFL–CIO–CLC, Local 50 (the union). The Board has cross-applied for enforcement of its order. For reversal the hospital argues that the union was improperly certified because (1) the involvement of supervisors in the election tainted the election process and required a new election and (2) the Board improperly denied the hospital's motion to dismiss the union's certification petition on the basis that the authorization cards were tainted by supervisory involvement. For the reasons discussed below, we enforce the Board's order.

The hospital is a seventy-eight (78) bed facility in Trenton, Missouri, located in a one-story building with a basement. The main floor is divided into three wings with a nursing station in each wing. Each nursing station has a registered nurse "in charge" on each of three shifts. The fifteen registered nurses so assigned are called charge nurses.

On October 8, 1980, the union filed a petition to be certified as the bargaining representative of certain employees, including charge nurses, at the hospital. On October 22, 1980, the Board's Region 17 office (Kansas City) conducted a hearing on the representation petition. At the hearing the hospital contended that the charge nurses were supervisors within the meaning of the National Labor Relations Act, 29 U.S.C. § 151 et seq. (1982) (Act), and thus could not be part of the bargaining unit. The union urged the inclusion of the charge nurses. The regional director rejected the hospital's arguments and decided that the charge nurses were professional employees rather than supervisors.

On November 17, 1980, the hospital filed a timely request for review of the regional director's decision but did not request a stay of the election. While the hospital's request for review was pending before the Board, the election campaign proceeded. It is undisputed that a number of charge nurses campaigned actively on behalf of the union. The nurses wore union buttons to work, attended union meetings, handed out union buttons, passed out authorization cards and responded to questions at union meetings.

On December 4, 1980, the Board conducted a secret ballot election. The ballots were subsequently impounded and the ballots of the charge nurses were segregated from the others pending disposition of the hospital's request for review. Five months after the election, on May 5, 1981, the Board overruled the regional director and held that the charge nurses were supervisors. *Wright Memorial Hospital*, 255 N.L.R.B. 1319, 1320 (1981). The Board, while acknowledging that the charge nurses do not hire, fire or interview potential employees, held that the charge nurses were supervisory because they had the authority to "hold employees over to work overtime, release employees from work, assign work and set priorities for employees, call in off-duty employees to work, resolve complaints or grievances, evaluate employees in writing, give written reprimands, send employees home on disciplinary suspension without pay, and recommend harsher discipline up to and including dis-

---

* The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

charge." *Id.* The Board remanded the case to the regional director for the purpose of opening and counting the ballots of the eligible voters.

On May 13, 1981 (six days after the Board's reversal of the regional director's decision), the hospital filed a motion to dismiss on the grounds that the pro-union activities of the charge nurses tainted the petition and invalidated the showing of interest. This motion was subsequently denied by the regional director as untimely. The regional director held that the issue should have been raised in the request for review filed with the Board in November of 1980 and, moreover, that the region had not discovered any taint or inadequacy in the showing of interest. On June 4, 1981, the Board denied the hospital's appeal of the regional director's denial of the motion to dismiss.

On June 11, 1981, the ballots of the eligible voters were opened and counted. Of the 147 ballots cast, 87 were in favor of the union, 55 were against representation by the union, and 5 were challenged.

On June 18, 1981, the hospital filed objections to the election. The hospital argued that (1) the union recruited a large number of the hospital supervisors and those supervisors solicited support and campaigned on behalf of the union throughout the election campaign, (2) a number of the union's organizational and strategy meetings which were attended by employees were held in the homes of supervisors, (3) hospital supervisors actively solicited employees to sign authorization cards on behalf of the union and to vote in favor of the union and (4) three supervisors served as principal organizers on behalf of the union. On July 9, 1981, a hearing was held on the objections and the hearing officer subsequently recommended that the objections be overruled in their entirety and that the union be certified. On March 10, 1982, the Board adopted the hearing officer's recommendations and certified the union.

On July 16, 1982, the union requested that the hospital bargain with it. By letter dated July 22, 1982, the hospital refused to bargain with the union. On April 20 and August 11, 1982, pursuant to a charge filed by the union, the regional director issued a complaint and an amended complaint alleging that the hospital had violated § 8(a)(5) and (1) of the Act by refusing to bargain with the union. The hospital admitted its refusal to bargain but argued that the union was improperly certified.

On September 23, 1982, the general counsel filed a motion for summary judgment and, on October 5, 1982, the Board issued an order transferring the case to itself and a notice to show cause why the general counsel's motion should not be granted. After reviewing the hospital's response to the notice to show cause, the Board granted the motion for summary judgment on July 6, 1984, and ordered the hospital to bargain with the union. The hospital thereafter sought a review of this order in federal court and the Board cross-applied for enforcement.

■■■ The primary issue before the court is whether the Board abused its discretion in overruling the hospital's objections to the election and certifying the union. " 'Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees.' " *Macy's Missouri-Kansas Division v. NLRB*, 389 F.2d 835, 842 (8th Cir.1968), citing *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330–31, 67 S.Ct. 324, 327–28, 91 L.Ed. 322 (1946); *see NLRB v. Manufacturer's Packing Co.*, 645 F.2d 223, 225–26 (4th Cir.1981); *Independent, Inc. v. NLRB*, 406 F.2d 203, 206 (5th Cir.1969). The court's review is "necessarily limited to a determination whether the board reasonably exercised [its] discretion." *Independent, Inc. v. NLRB*, 406 F.2d at 206. The party seeking to overturn a representation election has the burden of showing that the election was unfairly conducted. *NLRB v. Skelly Oil Co.*, 473 F.2d 1079, 1083 (8th Cir.1973); *see NLRB v. Mattison Machine Works*, 365 U.S. 123, 124, 81 S.Ct. 434, 435, 5 L.Ed.2d 455 (1961); *NLRB v. Manufactur-*

er's Packing Co., 645 F.2d at 225. As the court stated in NLRB v. Golden Age Beverage Co., "specific evidence is required, showing not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." Id., 415 F.2d 26, 30 (5th Cir.1969).

■ A union election is not per se invalid simply because there is evidence of pro-union supervisory activity. NLRB v. Manufacturer's Packing Co., 645 F.2d at 225–26; Catholic Medical Center v. NLRB, 620 F.2d 20, 22 (2d Cir.1980). This court has held that "supervisory support for a union will invalidate the union's majority only when the supervisor's activities (1) cause the employees to believe that the supervisors are acting on behalf of the employer and that the employer favors the union or (2) led the employees to support the union because they fear future retaliation by the supervisors." NLRB v. Wehrenberg Theatres, Inc., 690 F.2d 159, 162 (8th Cir.1982). See Fall River Savings Bank v. NLRB, 649 F.2d 50, 56 (1st Cir. 1981); Catholic Medical Center v. NLRB, 620 F.2d at 22; Stevenson Equipment Co. v. NLRB, 174 N.L.R.B. 865, 866 (1969). The critical question is whether the supervisors' actions " 'created an atmosphere of tension or coercion such as to preclude employees from exercising a free choice.' " NLRB v. Klingler Electric Corp., 656 F.2d 76, 86 (5th Cir.1981), citing NLRB v. Singleton Packing Corp., 418 F.2d 275, 281 (5th Cir.1969), cert. denied, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970). See NLRB v. Manufacturer's Packing Co., 645 F.2d at 225–26. The "[d]etermination of the effect of the supervisors' conduct is essentially a matter of drawing inferences, and it has long been settled that an agency's conclusions based upon such inferences should not be set aside by a reviewing court unless they transgress the bounds of reason." Catholic Medical Center v. NLRB, 620 F.2d at 22; see NLRB v. Manufacturer's Packing Co., 645 F.2d at 226.

■ The hospital does not contend that the pro-union activities of the charge nurses misled hospital employees into thinking that the hospital favored the union. Indeed, the record is to the contrary; the evidence shows that the hospital engaged in an aggressive anti-union campaign. The hospital organized an anti-union committee, distributed handouts two to three times a week, and held mandatory employees' meetings at which the hospital's anti-union position was clearly stated. Therefore, the union election in this case may not be invalidated on the basis that the employees believed that the supervisors were acting on behalf of the employer or that the employer favored the union. See NLRB v. Wehrenberg Theatres, Inc., 690 F.2d at 162.

The hospital argues that the second prong of the test—that the employees were led to support the union because they feared future retaliation by the supervisors—requires that the election be overturned. We disagree. There is no evidence that any supervisor threatened employees with future retaliation or discriminatory action if the employee did not support the union. We consider briefly each of the pro-union activities of the charge nurses.

It is undisputed that most of the charge nurses (twelve or thirteen of the fifteen) signed authorization cards and wore union buttons. Such activity in itself is not coercive nor does it have a tendency to imply retaliation. See NLRB v. Ozark Motor Lines, 403 F.2d 356, 358–59 (8th Cir.1968) (signing cards); Global Marine Development v. NLRB, 528 F.2d 92, 94–95 (9th Cir.1975) (signing cards), cert. denied, 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 83 (1976); NLRB v. San Antonio Portland Cement Co., 611 F.2d 1148, 1151–52 (5th Cir.1980) (wearing of union buttons is permissible statement of personal preference).

■ The number of charge nurses actively involved in the union campaign beyond signing cards and wearing buttons is hotly disputed. The hospital argues that as many as twelve were involved. The Board's finding that only three charge

nurses were actively involved in the campaign is supported by substantial evidence on the record as a whole and this court is bound by this finding. *NLRB v. Greyhound Lines, Inc.*, 660 F.2d 354, 356 (8th Cir.1981). The Board further found that the three charge nurses' participation in the campaign did not reasonably tend to cause employees to fear future retaliation. Supervisory solicitation of authorization cards does not in itself require that an election be set aside where "nothing in the words, deeds, or atmosphere of a supervisor's request for authorization cards contains the seeds of potential reprisal, punishment or intimidation." *NLRB v. San Antonio Portland Cement Co.*, 611 F.2d at 1151. There is no evidence in this case that the distribution of the cards or buttons was accompanied by any pressure or persuasion nor was there any evidence that the charge nurses required the employees to sign the authorization cards or return the cards to them. The distribution of union buttons and authorization cards under the circumstances of this case does not require overturning the election.

The record also shows that the three charge nurses talked to other employees concerning the union. The Board found that the comments were merely permissible expressions of personal opinion under circumstances which were not threatening or coercive. The statements of two charge nurses were found by the Board to be general in nature expressing their positions in favor of the union or pointing out possible benefits of union representation. These types of comments have consistently been found to be non-objectionable. *See NLRB v. Klingler*, 656 F.2d at 86–87; *NLRB v. Alamo Express, Inc.*, 430 F.2d 1032, 1035 (5th Cir.1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 584, 27 L.Ed.2d 633 (1971).

The Board also found that the three charge nurses who actively participated in the union campaign did not, contrary to the hospital's assertion, occupy leadership positions in the campaign. Two of the three charge nurses were members of the eighteen-member union campaign committee [1] but had no more influence than any other committee members. The union business agent controlled and directed the campaign, chaired all meetings of the committee, and acquired the majority of the 140 authorization cards signed by hospital employees. Further, the meetings attended by the three charge nurses were informal discussions in which all individuals in attendance could and did participate. The charge nurses' participation was limited to answering a number of questions directed to them. *See NLRB v. Manufacturer's Packing, Inc.*, 645 F.2d at 225 (union election upheld where supervisory pro-union comments were made in response to employee inquiries). This type of involvement does not in itself require that an election be set aside. *Global Marine Development v. NLRB*, 528 F.2d at 94–95 (supervisors had minor roles in campaign activities; included attendance at union meetings); *NLRB v. Kane*, 435 F.2d 1203, 1207 (4th Cir.1970) (supervisory participation was minimal; included attendance at meetings).

In evaluating the reasonable impact of the charge nurses' pro-union conduct, the Board considered the employees' perception of the charge nurses. The hospital argues that the hearing officer improperly relied upon this factor because the employees knew that the charge nurses (the overwhelming majority of whom supported the union) had immediate and virtually complete control over their working lives. We agree with the hospital that the employees' perception of the supervisory staff is not the dispositive factor in determining whether supervisory involvement requires a new election. However, in this case the relationship between the supervisors and the employees and the employees' perception of the charge nurses as non-management

1. The union campaign committee was composed of two charge nurses, two licensed practical nurses, two paramedics, and representatives of the aides, lab technicians, and medical records, dietary, and housekeeping staff. The members of the committee were selected by the union business agent and employees.

personnel bear on the question whether the employees would have reasonable apprehension that the employees' failure to support the union would result in retaliation by the charge nurses. The Board, therefore, did not improperly consider this factor.

The hospital properly urges us to consider the cumulative effect of the pro-union activities of the supervisors. We agree with the hospital that a supervisory pro-union activity, which considered singly might not require that the election be overturned, may together with other activities require that the election be set aside. This is a close case because the record indicates that the supervisors engaged in almost every type of allowable pro-union activity and the evidence could support a finding that the supervisors' actions interfered with the employees' free choice to such an extent that the supervisors' actions materially affected the results of the election. *NLRB v. Golden Age Beverage Co.*, 415 F.2d at 30. However, resolving conflicting interpretations of particular facts is not within the province of the court; inferences to be drawn from the evidence are matters for the Board. *International Union, UAW–AFL–CIO v. NLRB*, 392 F.2d 801, 806 (D.C. Cir.1967), *cert. denied* 392 U.S. 906, 88 S.Ct. 2058, 20 L.Ed.2d 1364 (1968). It is not the court's "function to overturn the Board's choice between two equally plausible inferences from the facts, if the choice is reasonable, even though [the court] might reach a contrary result if deciding the case de novo." *NLRB v. Crystal Springs Shirt Corp.*, 637 F.2d 399, 402 (5th Cir.1981); *see NLRB v. Morrison Cafeteria Co.*, 311 F.2d 534, 537 (8th Cir.1963). We are persuaded that the Board could reasonably infer from the facts that the hospital employees were neither coerced into voting in favor of the union because they feared future retaliation nor had reason to believe that any adverse action would be taken against them if they did not support the union.

The hospital next argues that the hospital was unfairly deprived of the right to utilize its charge nurse supervisors against the union in the campaign. The Board argues that the Act precludes the court from considering this argument because the hospital did not raise this contention to the Board. Where an employer fails to raise an objection to the Board, the court may not consider the objection, in the absence of extraordinary circumstances. 29 U.S.C. § 160(e); *NLRB v. Mr. B. IGA, Inc.*, 677 F.2d 32, 34 (8th Cir.1982). The hospital did not raise this issue before the Board and does not now indicate any extraordinary reasons for not raising the issue. The issue, therefore, is not preserved for appellate review.

The hospital lastly argues that the Board improperly denied its motion to dismiss the union's petition, which motion was filed immediately following the Board's determination that the charge nurses were non-supervisory personnel. The hospital urged two grounds for dismissal of the petition: (1) the activities of the charge nurses invalidated the showing of interest and (2) the charge nurses' activities tainted the petitions. The regional director held that the issue regarding showing of interest could and should have been raised in the hospital's request for review filed with the Board on November 18, 1980. Our holding above disposes of the claim that the charge nurses' activities tainted the petition. The showing of interest claim as a ground for dismissal of the petition is likewise without merit.

"The requirement of a showing of interest serves a limited purpose of enabling the board to determine whether the surrounding circumstances justify an election, thereby screening out obviously frivolous petitions." *Intertype Co. v. NLRB*, 401 F.2d 41, 43 (4th Cir.1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969). The courts have consistently held that "the validity of the showing of interest is for administrative determination and may not be litigated by the parties" at any stage of the proceeding. *NLRB v. Air Control Products*, 335 F.2d 245, 250 (5th Cir.1964); *see NLRB v. Metro-Truck Body,*

*Inc.*, 613 F.2d 746, 749–50 (9th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). Further, "[t]he question of union support is conclusively decided by the representation hearing and the actual secret ballot election. There is no need to litigate its existence at the initial petition stage." *NLRB v. Metro-Truck Body, Inc.*, 613 F.2d at 750. We therefore hold that the Board properly denied the hospital's motion to dismiss.

We hold that the Board properly certified the union and determined that the hospital, in refusing to bargain with the union, violated § 8(a)(5) and (1) of the Act. Accordingly, the Board's order is enforced.