# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1623

_____

National Labor Relations Board,        *
                                       *

        Petitioner,                   *

                                     *   Application for Enforcement
           v.                   *   of an Order of the National
                                     *   Labor Relations Board.

Davenport Lutheran Home,         *

                                     *

        Respondent.                 *

_____

Submitted:  January 10, 2001

Filed:  March 27, 2001

_____

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and DOTY,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After its full-time and regular part-time registered nurses and licensed practical nurses voted to join the Service Employees International Union, Local 73, AFL-CIO, Davenport Lutheran Home filed objections with the National Labor Relations Board (NLRB), contending that the election was improperly conducted. The NLRB considered these objections, but rejected them because it felt that they were not

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

sufficiently supported. Davenport, however, continued to protest the election and refused to engage in any bargaining with the union. This recalcitrance eventually led the NLRB to issue an order, finding that Davenport's refusal to bargain constituted an unfair labor practice, *see* 29 U.S.C. § 158(a)(1), § 158(a)(5), and requiring Davenport to bargain with the union.

The NLRB petitioned to enforce its order and we grant the petition.

## I.

Davenport argues that the NLRB erred when it allowed the union to file a second petition for representation after the union had withdrawn its first petition on the day before a pre-election hearing with the NLRB. Davenport maintains that the union acted in bad faith because it withdrew its first petition even though it clearly had an ongoing interest in seeking representation, as evinced by its second petition filed only a day after its first petition was withdrawn. Davenport therefore insists that the NLRB should have barred the union from filing a second petition by dismissing the union's first petition with prejudice.

Representation elections are not to be set aside lightly, and we must determine in our review whether the NLRB acted reasonably within the " 'wide degree of discretion,' " *Millard Processing Services, Inc. v. NLRB*, 2 F.3d 258, 261 (8th Cir. 1993), *cert. denied*, 510 U.S. 1092 (1994), quoting *NLRB v. A. J. Tower Co.*, 329 U.S. 324, 330 (1946), entrusted to it by Congress regarding representation matters. We will enforce the order of the NLRB if we find that it correctly applied the law and if substantial evidence in the record supports its findings. *See Deffenbaugh Industries, Inc. v. NLRB*, 122 F.3d 582, 586 (8th Cir. 1997).

To show that the NLRB should not have allowed the union to file a second petition, Davenport refers us to § 11110.1 and § 11114.1 of the NLRB's case-handling manual, which, it contends, required the NLRB to dismiss the union's first petition with

prejudice. Davenport's argument is entirely without merit. The first cited section allows the NLRB to dismiss a petition with prejudice when a petitioner seeks to use striking or picketing as a substitute for holding an election, and the other section applies only when a petitioner requests a withdrawal after the completion of a pre-election hearing or a stipulation between the parties. These conditions, of course, are not present in the instant case.

Guidance on whether the NLRB ought to allow a union to withdraw a petition for representation is provided instead by § 11112 of the NLRB's case-handling manual, which recommends that all requests for withdrawal received prior to the completion of a pre-election hearing or approval of an election agreement be granted without prejudice. The NLRB thus was acting fully within its discretion when it allowed the union to file a second petition after the union withdrew the first one.

## II.

Davenport also argues that the NLRB should have granted it an evidentiary hearing after the election to determine if the election was fairly conducted. Davenport contends that the election was flawed because some of its charge nurses, acting in a supervisory role, campaigned during the election process in support of the union. Because the NLRB denied Davenport's request for a hearing to investigate this allegation, Davenport maintains that its due process rights were violated and that the NLRB abused its discretion.

We review *de novo* the NLRB's denial of a request for a hearing after an election. *See Overnite Transportation Co. v. NLRB*, 105 F.3d 1241, 1244 (8th Cir. 1997). "To be entitled to a hearing, the requesting party must raise substantial or material issues which, if proved, would warrant setting aside the election," *Beaird-Poulan Division, Emerson Electric Co. v. NLRB*, 571 F.2d 432, 434 (8th Cir. 1978); *see also Rosewood Care Center of Joliet, Inc. v. NLRB*, 83 F.3d 1028, 1031 (8th Cir. 1996). The NLRB rejected Davenport's request for a hearing after its Acting

Regional Director found that Davenport failed to allege any facts that would have required the election to be vacated.

We think that this ruling was correct. In its request to the NLRB for a hearing, Davenport alleged that some of its charge nurses engaged in pro-union supervisory activity during the election. For example, Davenport maintained that its charge nurses expressed their preference for the union to other nurses and were actively involved in the signing of authorization cards. But Davenport was not entitled to a hearing on the basis of these allegations because, even if they were true, they do not establish that the election was improperly conducted. "A union election is not per se invalid simply because there is evidence of pro-union supervisory activity," *Wright Memorial Hospital v. NLRB*, 771 F.2d 400, 404 (8th Cir. 1985). We will overturn an election only if the supervisory activity causes the employees to believe mistakenly that their employer favors the union or leads the employees to vote for the union because they fear future retaliation from their supervisors. *See NLRB v. Wehrenberg Theatres, Inc.*, 690 F.2d 159, 162 (8th Cir. 1982) (*per curiam*).

There is no claim here that the supervisory activity caused employees to believe that Davenport supported the union. Nor did Davenport produce any evidence tending to show that its employees voted for the union because they were afraid of reprisals by the charge nurses. Davenport did not even assert that its charge nurses were in positions of sufficient authority to reward or punish other employees for their voting. Because there is no allegation that, if proved, would require a holding that the election was contaminated by supervisory coercion or manipulation, Davenport's challenge to the election could not have succeeded in any case. *See Wright Memorial*, 771 F.2d at 404; *see also NLRB v. Color Art, Inc.*, 932 F.2d 723, 724-27 (8th Cir. 1991). That being so, Davenport has not established that it was entitled to a hearing.

Davenport also contends that it should have been given a hearing because it was unable to obtain, on its own, the evidence that it needed to prove its case. We do not

think, however, that Davenport's lack of proof entitled it to a hearing. As we have said, the NLRB is not obligated to grant Davenport a hearing unless its allegations, if proved, would require the election to be set aside, and Davenport is not entitled to a hearing to engage in a fishing expedition for possible election improprieties, *see Natter Manufacturing Corp. v. NLRB*, 580 F.2d 948, 952 n.4 (9th Cir. 1978), *cert. denied*, 439 U.S. 1128 (1979). Because Davenport could not have prevailed even if its allegations were assumed to be true, we hold that the NLRB did not err in denying Davenport's request for a hearing after the election. *See Bauer Welding and Metal Fabricators, Inc. v. NLRB*, 676 F.2d 314, 321 (8th Cir. 1982).

III.

For the reasons indicated, we grant the NLRB's petition to enforce its order.

A true copy.

  Attest:

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.