**WAVERLY–CEDAR FALLS HEALTH CARE CENTER, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 90–2240.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1991.

Decided May 14, 1991.

Paul Lindemann, Greenville, S.C., for petitioner.

William Baudler, Washington, D.C., for respondent.

Before McMILLIAN, ARNOLD and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Waverly–Cedar Falls Health Care Center, Inc. ("Waverly") petitions this court for review of a decision[1] of the National Labor Relations Board ("Board") ordering Waverly to bargain with Teamsters Local No. 238 ("Union"). For reversal, Waverly argues that the Board misapplied the law in certifying a bargaining unit composed of Waverly's licensed practical nurses ("LPNs") because the LPNs are supervisors within the meaning of § 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11) ("Act"), and thus are not protected under the Act. The Board filed a cross-petition for enforcement of the order. For the reasons discussed below, we deny the petition for review and enforce the order of the Board.

Waverly operates a nursing care facility in Cedar Falls, Iowa. The facility maintains one hundred beds, providing intermediate nursing care for the infirm elderly. The facility operates twenty-four hours a day, seven days per week. The Administrator and Director of Nursing of the facility are present from 8:00 a.m. to 5:00 p.m., Monday through Friday. An Assistant Director of Nursing works from 8:00 a.m. to 2:30 p.m., Monday through Friday. The Director of Nursing oversees the Nursing Department and reports directly to the Ad-

---

1. *Waverly–Cedar Falls Health Care Center, Inc.,* 298 N.L.R.B. No. 151 (June 29, 1990).

ministrator. The Director of Nursing and the Assistant Director of Nursing are on call twenty-four hours per day.

In addition to the seven LPNs, Waverly employs four med-aides, and approximately thirty-five orderlies. Two LPNs and eight orderlies work on the day shift from 6:00 a.m. to 2:00 p.m.; two LPNs and seven orderlies work on the night shift from 2:00 p.m. to 10:00 p.m.; and one LPN and four orderlies work on the late night shift from 10:00 p.m. to 6:00 a.m.

On November 2, 1988, the Union filed a petition seeking to be certified to represent Waverly's seven LPNs. On December 6, 1988, following a hearing, the Acting Regional Director[2] of the Board found that the LPNs were "supervisors" as defined under the Act and dismissed the petition. The Acting Regional Director found that the LPNs were supervisors because they are the only supervisory personnel present during evenings and on weekends, assign and evaluate orderlies' work, excuse absences, and approve overtime. The Acting Regional Director noted that if the LPNs are not supervisors, there would be an unrealistic ratio of two supervisors (the Director and Assistant Director of Nursing) for forty-six nursing department employees (the seven LPNs, four med-aides, and thirty-five orderlies).

The Union appealed this decision to the Board. The Board concluded that "the LPNs do not possess supervisory authority" and reversed the Acting Regional Director's decision. 297 N.L.R.B. No. 40, slip op. at 3 (Nov. 28, 1989). In reversing, the Board noted that the LPNs lacked authority to transfer, lay off or recall employees. *Id.* at 7. The Board also concluded that the LPNs lacked supervisory status in regard to work assignments for other employees at the facility. The Union won the representation election and was certified as the exclusive collective bargaining representative of all LPNs employed by Waverly.

On March 9, 1990, the Union filed an unfair labor practice charge against Waverly alleging that Waverly violated §§ 8(a)(1) and 8(a)(5) of the Act by refusing to bargain with the Union. Waverly admitted that it had refused to recognize or bargain with the Union, but argued that LPNs employed at the Cedar Falls facility did not constitute a unit appropriate for the purposes of collective bargaining within the meaning of § 9(b) of the Act because the LPNs are supervisors.

On May 17, 1990, the General Counsel filed a Motion for Summary Judgment with the Board. On May 21, 1990, the Board issued an order transferring the proceeding to the Board. On June 29, 1990, the Board granted the General Counsel's Motion for Summary Judgment and ordered Waverly to cease and desist from refusing to bargain with the Union. 298 N.L.R.B. No. 151, slip op. at 3–4 (June 29, 1990). The Board concluded that all representation issues were or could have been litigated in the prior representation hearing. *Id.* at 2. On July 30, 1990, Waverly petitioned this Court for review of the Board's decision.

 In order to challenge certification of a collective bargaining unit, an employer must refuse to recognize a union after its certification. Board certifications under § 9(c) of the Act are not reviewable as final orders of the Board, *see, e.g., AFL v. NLRB*, 308 U.S. 401, 404–07, 60 S.Ct. 300, 301–03, 84 L.Ed. 347 (1940); *Technicolor Government Services, Inc. v. NLRB*, 739 F.2d 323, 326 (8th Cir.1984) (*Technicolor*), but an order to bargain following an unfair labor practice hearing is a final, appealable order. 29 U.S.C. § 160(e), (f). If a union files an unfair labor practice charge for refusal to bargain, the employer may then challenge the certification of the unit as an affirmative defense[3] to the charges. *Technicolor*, 739 F.2d at 326.

---

**2.** Richard R. Anderson, Acting Regional Director, National Labor Relations Board, Eighteenth Region.

**3.** Title 29 U.S.C. § 164(a) allows employers to refuse to bargain with unions whose member-

ship consists of supervisors. Section 164(a) provides:

> Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this subchapter

Thus, it is procedurally appropriate for Waverly to challenge the certification determination via an appeal of the unfair labor practice charge. Review of the Board's unit certification decision is limited to a determination of whether the decision is arbitrary, capricious, an abuse of discretion, or lacking in substantial evidentiary support. *NLRB v. Metal Container Corp.*, 660 F.2d 1309, 1313 (8th Cir. 1981).

> The determination of who is a supervisor is a fact question which calls upon the Board's special function of applying the general provisions of the Act to the infinite gradations of the authority within a particular industry. Therefore the Board may exercise a large measure of informed discretion and a court must accept its determinations so long as they have "warrant in the record" and a reasonable basis in law.

*NLRB v. Chem–Fab Corp.*, 691 F.2d 1252, 1256 (8th Cir.1982) (citations omitted) (*quoting Jas. H. Matthews & Co. v. NLRB*, 354 F.2d 432, 435 (8th Cir.), *cert. denied*, 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015 (1966)).

> [A] reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light the record in its entirety furnishes, including the body of evidence opposed to the Board's view.

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). We hold that the Board's decision that the LPNs are not supervisors is supported by substantial evidence.

Title 29 U.S.C. § 152(3) excludes "any person employed as a supervisor" from the definition of the term "employee." The Act does not require employers to bargain with unions which represent supervisors. 29 U.S.C. § 164. Section 2(11) of the Act, 29 U.S.C. § 152(11), defines "supervisor" as

[A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

By excluding "supervisors" from the definition of "employee," § 2(3) of the Act, 29 U.S.C. § 152(3), excludes supervisors from protection under the Act. *Iowa Electric Light & Power Co. v. NLRB*, 717 F.2d 433, 434 (8th Cir.1983), *cert. denied*, 466 U.S. 903, 104 S.Ct. 1677, 80 L.Ed.2d 153 (1984); *NLRB v. Res–Care, Inc.*, 705 F.2d 1461, 1465 (7th Cir.1983) (*Res–Care*).

As Waverly notes, § 2(11) of the Act is to be read disjunctively, that is, if an employee "exercises, or possesses the authority to exercise, *any one* of the enumerated functions listed in the statute, he [or she] has supervisory status." *NLRB v. Harmon*, 565 F.2d 1047, 1049 (8th Cir.1977) (*Harmon*) (emphasis in original). Moreover, 29 U.S.C. § 152(11) does not require the exercise of supervisory power, merely the existence of the power. *Harmon*, 565 F.2d at 1049. However, "the possession or exercise of the authority must involve the use of independent judgment." *Id.*

Waverly contends that the LPNs possess and exercise the following indicia of supervisory status: assigning and directing nurse aides, enforcing nursing and personnel policies, issuing oral and written disciplinary warnings, conducting performance evaluations, authorizing overtime, and possessing the authority to call in off-duty personnel.

The Board found that the Assistant Director of Nursing, not the LPNs, scheduled and assigned the nurse aides. 297 N.L.R.B. No. 40, slip op. at 6. The Board acknowledged the LPNs' "day-to-day" direction of the aides, but found such authority "routine" and primarily related to pa-

---

shall be compelled to deem individuals defined herein as supervisors as employees for

the purpose of any law, either national or local, relating to collective bargaining.

tient care. *Id.* at 10. Authority exercised in a merely routine manner is not supervisory authority. *Harmon*, 565 F.2d at 1049; *NLRB v. Sayers Printing Co.*, 453 F.2d 810, 814 (8th Cir.1971) (employees who had authority to "assign" and "responsibly direct" others were not supervisors because they did not exercise independent judgment, but instead merely carried out the policies of management).

In *Res–Care*, the Seventh Circuit reviewed a Board decision which found LPNs not to be supervisors under Section (2)(11). The court enforced the decision despite the LPNs' authority to assign nurse aides. 705 F.2d at 1468. The court noted that the LPNs exercise this authority within "tight constraints" and that their "discretion [was] exercised in accordance with a professional judgment as to the best interests of the patient rather than a managerial judgment as to the employer's best interests." *Id.*

Similarly, if sickness or emergency requires, an LPN at the Waverly facility may call in a replacement by following the call-in list. However, Waverly has a standing policy for LPNs to use the call-in list, and following this procedure does not involve an exercise of independent judgment. If a replacement employee cannot be found, either the Director of Nursing or the Assistant Director of Nursing is called. The LPNs are simply carrying out the policies of management.

In regard to disciplinary matters, the Board found that although LPNs possess the authority to issue written and oral warnings to nurse aides and orderlies, the Director of Nursing controls all disciplinary action and warnings alone do not affect job status. Such limited disciplinary authority is not sufficient for supervisory status. The Board has previously stated, "for the issuance of reprimands or warnings to constitute statutory supervisory authority, the warning must not only initiate, or be considered in determining future disciplinary action, but also it must be the basis of later personnel action without inde-

pendent investigation or review by other supervisors." *Passavant Health Center*, 284 N.L.R.B. No. 62 (July 9, 1987).

Waverly also contends that if the LPNs are not supervisors then the ratio of supervisors to employees is too low. If the LPNs are not supervisors, there would be a ratio of one supervisor to approximately fifteen employees. If the LPNs are supervisors, there would be a ratio of one supervisor to approximately four employees. The Board found both ratios to be arguably unreasonable and therefore did not use the ratio as a factor in determining the LPNs' status. 297 N.L.R.B. No. 40, slip op. at 12.

As Waverly notes, if the LPNs are not supervisors, then the facility is "unsupervised" during the majority of its hours of operation. However, both the Director and Assistant Director of Nursing are on call twenty-four hours a day. Moreover, the test for supervisory status requires the exercise of independent judgment; the record indicates that LPNs merely follow routine procedures while they are "in charge."

*Res Care* supports the proposition that the LPNs are not necessarily supervisors even if they are frequently the highest ranking employees present at the facility. In *Res Care*, the Seventh Circuit stated, "[a]lthough on the evening and night shifts the licensed practical nurses are the highest ranking employees on the premises, this does not ipso facto make them supervisors." 705 F.2d at 1467.

Finally, this court's decision in *Wright Memorial Hospital v. NLRB*, 771 F.2d 400 (8th Cir.1985) (*Wright*), is distinguishable from the present case. In *Wright*, this court enforced an order of the Board which required a hospital to bargain with a union, Service Employees International Union. In its decision, the Board had determined that the hospital's "charge nurses"[4] were supervisors. *Wright* involved nurses who were registered nurses whereas the nurses in the present case are licensed practical nurses. In *Wright Memorial Hospital*, the Board had concluded that the charge

---

4. Nurses are called charge nurses because they are "in charge" of their respective nursing sta-

tion. *Wright Memorial Hospital v. NLRB*, 771 F.2d at 402.

nurses "possess[ed] the same authority as the department heads who were stipulated to be supervisors." 255 N.L.R.B. 1319 (1981) In the present case, however, the Board found that the LPNs exercised no independent judgment in exercising their authority. 297 N.L.R.B. No. 40, slip op. at 12. Moreover, the holding in *Wright* concerned the validity of the representation election in light of pro-union activities of some of the charge nurses, not the Board's determination that the charge nurses were supervisors.

We have carefully reviewed the record and conclude that substantial evidence supports the Board's determination that the LPNs employed at the Waverly facility are not supervisors within § 2(11) of the Act. Accordingly, we deny the petition for review and enforce the order of the Board.

LOKEN, Circuit Judge, concurring.

Bearing in mind the purpose underlying the "supervisor" exception in § 2(3) of the Act, as well as the statutory definition of "supervisor" in § 2(11), I believe that the Board's Acting Regional Director was on sound ground in concluding that the LPNs at issue in this case are "supervisors." As the Sixth Circuit succinctly stated in denying enforcement of a comparable Board order in *N.L.R.B. v. Beacon Light Christian Nursing Home*, 825 F.2d 1076, 1080 (6th Cir.1987):

> If the LPN's were not supervisors, then 15 to 30 nursing personnel frequently were providing patient care with no on-site supervision. This is not a reasonable conclusion for a well-run nursing home, and there is no substantial evidence to support it.

The Board's stated reasons for rejecting the Acting Regional Director's decision in this case, though effectively marshalled in Judge McMillian's opinion, do not persuade me and seem to reflect a pattern of inconsistent Board decisions on this issue that several courts have noted. *See, e.g., N.L.R.B. v. St. Mary's Home*, 690 F.2d 1062, 1067 (4th Cir.1982); *Misericordia Hosp. Medical Center v. N.L.R.B.*, 623 F.2d 808, 818 n. 21 (2d Cir.1980). Still, the Board's

decision does do a credible job of applying the relevant statutory factors to the facts of this case and of attempting to harmonize at least many of its prior decisions on this issue.

This is obviously a close case. Since the Board has engaged in neither unsupported fact-finding nor arbitrary decision-making, I agree with those reviewing courts that have concluded that the Board's order in a close case of this nature should be enforced. *See N.L.R.B. v. Res–Care, Inc.*, 705 F.2d 1461, 1468 (7th Cir.1983); *Misericordia Hosp. Medical Center*, 623 F.2d at 818; *N.L.R.B. v. St. Francis Hosp.*, 601 F.2d 404, 422 (9th Cir.1979). Solely for this reason, I concur.