

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-1996

# Nat'l Lab. Rel. Bd. v. Konig

Precedential or Non-Precedential:

Docket 95-3085

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Nat'l Lab. Rel. Bd. v. Konig" (1996). *1996 Decisions.* Paper 211.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/211

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Nos. 95-3085 and 95-3129

NATIONAL LABOR RELATIONS BOARD

                              <u>Petitioner</u>

                    v.

        MICHAEL KONIG t/a NURSING HOME
             CENTER AT VINELAND
                         <u>Respondent/</u>
                         <u>Cross-Petitioner</u>

        * COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO
                              <u>Intervenor-Petitioner</u>

         *(Granted as per Court's 4/7/95 Order)

        On Application for Enforcement of an Order
         of the National Labor Relations Board

             Argued October 30, 1995

          BEFORE:  NYGAARD, ALITO and
            SAROKIN, <u>Circuit Judges</u>

         (Opinion filed March 11, 1996)

                         Linda J. Dreeben
                         John D. Burgoyne (argued)
                         Aileen A. Armstrong
                         Angela Washington
                         National Labor Relations

Board
1099 14th St., NW
Suite 8101
Washington, DC 20570

                        Attorneys for Petitioner


Steven P. Weissman
Weissman & Mintz
One Executive Drive, Suite 200
Somerset, NJ  08873

                        Attorney for Intervenor


David Lew (argued)
Peckar & Abramson, P.C.
70 Grand Avenue
River Edge, NJ  07661

                        Attorney for Respondent/
                        Cross-Petitioner

OPINION OF THE COURT


SAROKIN, Circuit Judge:

This case comes before this court on an application of the National Labor Relations Board ("NLRB" or "the Board") to enforce an Order against Michael Konig t/a Nursing Center at Vineland ("the Home") to cease and desist from engaging in unfair labor practices.  The Board had issued a Decision and Order concluding that the Home had violated sections 8(a)(1), (3), (4) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§158(a)(1), (3), (4) & (5), by committing unfair labor practices against

2

several licensed practical nurses ("LPNs") engaged in union activities. The Home contests this Decision and Order on the ground that an intervening Supreme Court case, <u>NLRB v. Health Care & Retirement Corp. of America</u>, __ U.S. __, 114 S. Ct. 1778 (1994), overturned Board precedent, rendering LPNs supervisory employees who are not covered by the NLRA. Because the Home waived this contention by failing to raise it in the prior proceedings, we deny review and grant enforcement.

I.

The Home is a long-term nursing home in Vineland, New Jersey. In June 1992, the Communications Workers of America, Local 1040, AFL-CIO ("CWA" or "the union") began seeking to organize the LPNs working at the Home.[0] Several LPNs became interested in the union. The union filed a petition for representation of the Home's LPNs on June 8, 1992.

On July 8, 1992, the Board held a representation hearing to address three questions: (1) whether the LPNs were already represented by another union; (2) whether the unit was appropriately limited to LPNs; and (3) whether three of the LPNs were "charge nurses" and thus supervisors within the meaning of

_____

[0]The following brief summary of the facts in this case is based on the findings of the Board in its Decision and Order issued in <u>Michael Konig t/a Nursing Center at Vineland</u>, 314 NLRB 947 (1994). The Home has not raised any objections with respect to the Board's factual findings, nor did it object to the Board's conclusion that these facts constituted unfair labor practices under the Act. They have thus waived any objection as to the Board's findings, <u>see</u> <u>NLRB v. Browning-Ferris Industries, Etc.</u>, 691 F.2d 1117, 1125 (3d Cir. 1982), and we will accept them as true.

3

section 2(11) of the NLRA, 29 U.S.C. § 152(11). The Regional Director found in favor of the union on all three issues and issued a Decision and Direction of Election on September 17, 1992. The election was conducted, and on October 27, 1992 the union was certified as the exclusive bargaining representative of the LPNs.

Throughout this period, particularly following the CWA's filing of its representation petition and around the time of the representation hearing, the LPNs' unionization efforts met with serious impediments by the Home management. The LPNs were threatened, harassed, and some eventually were terminated as a result of their union activities.

The union filed unfair labor practice charges against the Home, alleging that the Home had violated sections 8(a)(1), (3), (4) and (5) of the NLRA in July, August and September of 1992. The case was heard during March and May of 1993. On August 31, 1994, the NLRB issued a Decision and Order. <u>Michael Konig t/a Nursing Center at Vineland</u>, 314 NLRB 947 (1994). The Board found that the Home had discouraged employees from engaging in union activities and had discharged three LPNS and reduced the pay of a fourth because of their union activities and had thus engaged in unfair labor practices in violation of the NLRA. The Board accordingly ordered the Home to reinstate the three who had been terminated to their former positions or substantially similar positions and to make them whole for losses incurred, and to restore pay to the one whose salary had been reduced, including backpay. The Order also required the Home to bargain with the

4

CWA as the exclusive representative of the employees in the LPN unit on terms and conditions of employment. It is this Decision and Order that the Board seeks to enforce before this Court.

Meanwhile, on May 23, 1994, after the case had been heard but before the Board had issued its opinion, the Supreme Court issued its decision in Health Care & Retirement Corp., in which it held that nurses who engage in patient care are acting "in the interest of the employer" and therefore may be supervisors within the meaning of the NLRA. NLRB v. Health Care & Retirement Corp., 114 S. Ct. 1778 (1994).[0] Based on this Supreme Court decision, the Home has since refused to bargain with the CWA on the ground that the LPNs are supervisors not protected by the NLRA.

In an action separate from the instant one, the union filed another unfair labor practice charge for refusal to bargain with the LPNs in July 1994, and a hearing was held on this issue in February 1995. Prodded by the decision in Health Care & Retirement Corp. the Home presented evidence that the LPNs were supervisors within the meaning of the NLRA and therefore unprotected by the Act. On May 12, 1995, the Administrative Law Judge ("ALJ") issued a Decision and Order in Case No. 4-CA-22933, concluding that the Home was barred from raising the objection to the representation unit on the basis that the LPNs were

---

[0]As explained, infra, the Supreme Court did not alter the Board's statutory interpretation of the other two prongs of the definition of supervisor, i.e. that (1) the individual engages in at least one of twelve designated supervisory activities; and (2) that the individual exercises independent judgment in performing these activities. See Health Care & Retirement Corp., 114 S.Ct. at 1780.

supervisors at this unfair labor practices hearing when they had not raised this issue at the original representation proceeding, and that, in any event, the evidence introduced at the original representation hearing and the findings from that hearing did not support the contention that the LPNs were supervisors, even under Health Care & Retirement Corp. The Home was thus ordered to bargain with the union as the representative of the certified LPN unit. The Board later affirmed the ALJ's decision, accepting its rulings, findings and conclusions and explicitly noting that there was "no showing that the LPNs . . . exercise independent judgment in performing" assignments and that Health Care & Retirement Corp. was therefore inapplicable. Michael Konig t/a Nursing Center at Vineland, 318 NLRB No. 64 at 1 n.1 (1995). This court summarily denied the Home's petition to review this decision and granted the NLRB's cross-petition for enforcement on December 14, 1995. Konig v. NLRB, No. 95-3507 (December 14, 1995) (order).

II.

The NLRB had jurisdiction to hear the unfair labor practice proceeding under section 10(a) of the NLRA, 29 U.S.C. § 160(a). This court has jurisdiction over the Board's appeal for enforcement of the Order under section 10(e) of the NLRA, 29 U.S.C. § 160(e), and over the Home's petition for review of the Order under section 10(f). 29 U.S.C. § 160(f).

We will uphold the Board's findings of fact if they are supported by substantial evidence on the record considered as a

6

whole.  Universal Camera Corp. v. NLRB, 340 U.S. 474, 485-87

(1951).  Our review of questions of law is plenary.  Tubari Ltd.

v. NLRB, 959 F.2d 451, 453 (3d Cir. 1992).


                              III.

     The NLRA does not provide protection for individuals who are

supervisors within the meaning of the Act. See 29 U.S.C. §152(3);

see also Waverly-Cedar Falls Health Care Center v. NLRB, 933 F.2d

626, 629 (8th Cir. 1991) ("By excluding 'supervisors' from the

definition of 'employee,' § 2(3) of the Act . . . excludes

supervisors from protection under the Act.").  Section 2(11) of

the NLRA defines "supervisor" as follows:
         any individual having authority, in the interest of the
         employer, to hire, transfer, suspend, lay off, recall,
         promote, discharge, assign, reward, or discipline other
         employees, or responsibly to direct them, or to adjust
         their grievances, or effectively to recommend such
         action, if in connection with the foregoing the
         exercise of such authority is not of a merely routine
         or clerical nature, but requires the use of independent
         judgment.

29 U.S.C. § 152(11) (emphasis added).  An individual is a

supervisor within the meaning of the statute, then, if she (1)

has the authority to engage in one of the twelve listed

activities; (2) exercises that authority with "the use of

independent judgment;" and (3) holds the authority "in the

interest of the employer."  Health Care & Retirement Corp., 114

S. Ct. at 1780.

     Prior to Health Care & Retirement Corp., the Board

consistently had held that "'a nurse's direction of less skilled

employees, in the exercise of professional judgment incidental to

                                7

the treatment of patients, is not authority exercised "in the interest of the employer."'" Id. (citation omitted). See, e.g., Northcrest Nursing Home, 313 NLRB 491, 493-94 (1993); Beverly Enters., Alabama Inc., 304 NLRB 861, 864 (1991) ("[W]e further find that assignment and direction of nurses aides' work by LPNs is routine and primarily in connection with patient care and does not establish that the LPNs are supervisors."); Phelps Community Medical Center, 295 NLRB 486, 490 (1989) (same); The Ohio Masonic Home, 295 NLRB 390, 395 (1989) (LPNs not supervisors because their direction of aides' work was done in "connection with patient care and did not go beyond into 'personnel authority which more directly promote the interests of the employer and which is not motivated by patient care needs.'") (citation omitted).

The Supreme Court overturned the Board's statutory interpretation in its opinion in Health Care & Retirement Corp, 114 S. Ct. 1778 (1994). There, the Court concluded that "[p]atient care is the business of a nursing home, and it follows that attending to the needs of the nursing home patients, who are the employer's customers, is in the interest of the employer." Id. at 1782. It thus found that four LPNs who performed some of the twelve activities listed in the statute in the interest of patient care necessarily did so "in the interest of the employer" and were therefore supervisors under the Act. Id. at 1781, 1785.

A.

The Home argues that in light of this recent decision, this court should deny enforcement of the Board's Order because it

renders the LPNs in the instant case supervisors and thus not entitled to the protection of the Act. Initially, we emphasize that Health Care & Retirement Corp. did not rule that all LPNs are necessarily supervisors; rather it ruled that all LPNs who perform one of the twelve tasks listed in section 2(11), exercising their own independent judgment and in the interest of patient care, are supervisors. Id.

The Home claims that the record from the hearing before the administrative law judge in Michael Konig t/a Nursing Center at Vineland, Case No. 4-CA-22933, the action filed by the union in July of 1994 for the Home's refusal to bargain, demonstrates that the LPNs are supervisors under Health Care & Retirement Corp. We first note that case No. 4-CA-22933 was not consolidated with the instant case and is thus not presently before this panel on appeal.[0] Therefore, we decline to consider the record from that case in this appeal. In any event, the Board in case No. 4-CA-22933 ruled that the record failed to demonstrate that the LPNs were supervisors, even in light of Health Care & Retirement Corp.,[0] and this court has affirmed the Board.[0] Thus, even were

[0]On October 3, 1995, this court denied a motion to consolidate the instant appeal with the appeal from the Board's decision in case No. 4-CA-22933. Case No. 4-CA-22933 was then appealed separately from the instant matter, and a panel of this court denied review and granted enforcement. See Konig v. NLRB, No. 95-3507 (December 14, 1995) (order).
[0]In affirming the ALJ, the Board specifically noted that any evidence in the record suggesting that LPNs assigned and directed nurses' aides indicated that such actions were not taken with the exercise of independent judgment and therefore Health Care & Retirement Corp. was not applicable. Konig, 318 NLRB No. 64 at 1 n.1.
[0]We note that, because the Board's decision in case No. 4-CA-22933 was based on alternative grounds (i.e. that the Home waived

we to consider the record, it seems doubtful that it would support the Home's contentions.

Accordingly, there is nothing in the record before us to support the Home's contention that the LPNs are supervisors under Health Care & Retirement Corp. However, because we decide, infra, that the Home may not object to the Board's Order on the ground that the LPNs are supervisors at this juncture in the proceeding, it will not be necessary to remand this case to determine whether the LPNs are supervisors.

B.

In the original proceeding before the Board, the Home failed to raise its current contention that the Act did not apply to the LPNs because they were supervisors.[0] Section 10(e) of the NLRA bars an appellate court from reviewing an issue that was not

its opportunity to raise this issue and that the record did not demonstrate that the LPNS were supervisors), this court's denial of review and grant of enforcement in that action does not preclude the Home from litigating the supervisory status of the LPNs in this action. The Board's findings regarding the supervisory status of the LPNs was not essential to the court's judgment. See Restatement (Second) of Judgments, § 27 cmt. h (1982) ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded.").

[0]During the hearing regarding the union's petition for representation, the Home did raise the claim that certain LPNs were supervisors within the meaning of § 2(11) because they are charge
nurses. First, we note that this objection was proffered in a different proceeding from the one at issue in this appeal for review and therefore has no bearing on the instant action. Second, even had this objection been raised in the instant action, it was only in reference to these three LPNs as charge nurses. The objection did not apply to the remaining LPNs in the bargaining unit. In fact, by claiming supervisory status specifically as to these three employees, the Home implicitly accepted that the other LPNs were not supervisors.

raised in the Board proceeding: "No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such exception shall be excused because of extraordinary circumstances." 29 U.S.C. §160(e). The Supreme Court has construed this rule strictly. See Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66 (1982). In Woelke & Romero Framing, the Board had addressed an issue sua sponte which had not been raised or argued by either party. When the petitioner sought review of the court of appeals' ruling on that issue before the Supreme Court, the Court held that under section 10(e), the court of appeals had no jurisdiction to consider the question because the petitioner had not raised it before the Board. The Court specifically noted that the petitioner "could have objected to the Board's decision in a petition for reconsideration or rehearing" and its "failure to do so prevents consideration of the question by the courts." Id. at 666.

The Home argues, however, that the Supreme Court's decision in Health Care & Retirement Corp. constitutes an "extraordinary circumstance," and that, thus, by the terms of section 10(e) of the NLRA, its failure to raise the issue of the LPNs' supervisory status before the Board should be excused in this case.

The Supreme Court has held on at least one occasion that intervening Supreme Court case law may be considered an "extraordinary circumstance" under section 10(e), allowing a reviewing court to decide an issue that was not raised originally

11

before the Board. In <u>Sure-Tan, Inc. v. NLRB</u>, the petitioners sought to raise for the first time a First Amendment argument suggested by a Supreme Court decision, <u>Bill Johnson's Restaurant, Inc. v. NLRB</u>, 461 U.S. 731 (1983), which had been issued six months after the petition for certiorari in <u>Sure-Tan</u> had been filed. <u>Sure-Tan, Inc. v. NLRB</u>, 467 U.S. 883, 896 & n.7 (1984). The Court held that it could address this argument even though petitioners had not raised it before the Board as required by section 10(e) because the intervening and substantial change in controlling law occasioned by <u>Bill Johnson's Restaurant</u> qualified as an extraordinary circumstance. <u>Sure-Tan</u>, 467 U.S. at 896 n.7. Thus, it might appear that under <u>Sure-Tan</u>, the Home may raise the issue of the LPNs' supervisory status in light of the <u>Health Care & Retirement Corp.</u> decision.

We find, however, that the facts of the instant matter are substantially different from those in <u>Sure-Tan</u>, rendering that holding inapplicable to the instant case. As noted above, the decision in <u>Bill Johnson's Restaurant</u> was issued six months <u>after</u> the petition for certiorari in <u>Sure-Tan</u> was filed. The petitioner in that case thus could not have raised the issue before the Board or even the court of appeals because <u>Bill Johnson's Restaurant</u> had not yet been decided. Here, by contrast, the Supreme Court's decision in <u>Health Care & Retirement Corp.</u> was issued on May 24, 1994, three months <u>before</u> the Board's August 31, 1994 decision in this matter. Thus, the Home easily could have informed the Board of the <u>Health Care & Retirement Corp.</u> decision and raised the issue of the LPNs'

12

supervisory status before the Board during those three months. Indeed, as made clear in <u>Woelke & Romero Framing</u>, the Home had the obligation to raise the argument itself because, even had the Board addressed the issue <u>sua</u> <u>sponte</u>, any reviewing court would not have had jurisdiction due to the parties' failure to argue the point before the Board. <u>Woelke & Romero Framing</u>, 456 U.S. at 665-66. The Home could even have filed a petition for reconsideration as permitted by 29 CFR § 102.48(d)(1) following the Board's decision.⁰ Yet, it failed to do so.

Unlike in <u>Sure-Tan</u>, then, where the petitioner could not have raised the argument suggested by intervening precedent until after the petition for certiorari was granted, there were no extraordinary circumstances here that would have prevented the Home from raising the issue of the LPNs' supervisory status until now. The Home's failure to raise the argument, and certainly its failure to file a petition for reconsideration, deprives this court of jurisdiction to address this question under section 10(e) of the NLRA. <u>See</u> <u>Woelke & Romero Framing</u>, 456 U.S. at 665-66.

C.

---

⁰The text of 29 CFR § 102.48(d)(1) reads, in relevant part, as follows:
> A party to a proceeding before the Board may, because of extraordinary circumstances, move for reconsideration, . . . after the Board decision or order. A motion for reconsideration shall state with particularity the material error claimed and with respect to any finding of material fact shall specify the page of the record relied on.

13

We now briefly address the question of whether, assuming the LPNs at issue in the current action are supervisory personnel, the Board had jurisdiction to issue an order compelling reinstatement and backpay for supervisors. We address this issue despite our conclusion, supra, that the Home has waived its objection because the Home claims that a challenge regarding lack of jurisdiction can be raised at any time. Petitioner's Brief at 27.

The Home's argument fails to recognize the distinction between jurisdiction in the sense of the overall authority of the Board to hear the case under the NLRA and the jurisdiction of the Board to issue an order based upon a factual determination made by the Board. "While the Board's statutory jurisdiction may be raised at any time, the facts upon which the Board determines it has jurisdiction may be challenged only upon timely exception." NLRB v. Peyton Fritton Stores, Inc., 336 F.2d 769, 770 (10th Cir. 1964) (per curiam); see also Polynesian Cultural Center, Inc. v. NLRB, 582 F.2d 467, 472 (9th Cir. 1978).

The question of whether the Board had the jurisdiction to order reinstatement and backpay to the LPNs rests on the factual determination by the Board regarding their supervisory status. The Home cannot raise this type of jurisdictional objection for the first time before this court absent extraordinary circumstances.

Indeed, in NLRB v. International Health Care, Inc., 898 F.2d 501, 506-507 (6th Cir. 1990), the Sixth Circuit arrived at the same conclusion when addressing an issue virtually identical to

14

the one currently before us. There, as here, the court was called upon to decide whether the employer could raise an objection for the first time that the Board lacked jurisdiction to order the employer to bargain with a unit of LPNs because the LPNs were supervisors under the reasoning of the Sixth Circuit's case NLRB v. Beacon Light, 825 F.2d 1076 (6th Cir. 1987). The court concluded that this sort of jurisdictional challenge based on factual determinations could not be raised for the first time before the court of appeals. International Health Care, 898 F.2d at 506-07 (citing NLRB v. Ferraro's Bakery, Inc., 353 F.2d 366 (6th Cir. 1965) (holding that the Board had jurisdiction to determine whether certain workers were "employees" within the NLRA and failure of respondent to file timely exception to factual determination was not an exceptional circumstance)).

We accept the reasoning of the Sixth Circuit, as well as the Ninth and Tenth Circuits, and conclude that the Home cannot raise for the first time before this court an objection to the Board's jurisdiction to award backpay and reinstatement to LPNs on the theory that they are supervisors.[0]

We further mention here, as an aside, that even if the LPNs are in fact supervisors, the Board may still have jurisdiction to order their reinstatement and backpay. First, "it is settled law that, notwithstanding the statutory exclusion of supervisors from the Act's protection . . . an employer's discharge of a supervisor may give rise to an 8(a)(1) violation." Kenrich

---

[0] Judge Alito does not join the portion of Part III of this opinion that comes after this footnote.

15

<u>Petrochemicals, Inc. v. NLRB</u>, 893 F.2d 1468, 1475 (3d Cir.), <u>enforced on other grounds</u>, 907 F.2d 400 (3d Cir. 1990) (in banc) (citations omitted). Specifically, the Board has the authority "to order the reinstatement of a supervisor whose firing resulted not from her own pro-union conduct, but from the employer's efforts to thwart the exercise of section 7 rights by protected rank-and-file employees." <u>Kenrich Petrochemicals</u>, 907 F.2d at 406.

We recognize that, assuming <u>arguendo</u> that the LPNs are supervisors under <u>Health Care & Retirement Corp.</u>, this case does not involve the discharge of supervisors for purposes of thwarting the exercise of rights of non-supervisory employees. Rather, the LPNs in this case were discharged for engaging in pro-union activity to protect their <u>own</u> rights. This court has held that in instances where a supervisor is discharged for seeking to invoke the Board's protection on her own behalf, the Board lacks jurisdiction to grant reinstatement and backpay. <u>Hi-Craft Clothing Co. v. NLRB</u>, 660 F.2d 910, 917-18 (3d Cir. 1981).

Nonetheless, we cannot ignore the reality that, at the time that the LPNs were engaged in pro-union activity and the Home actively discouraged it, the Home knew that under the Board's legal precedent in force at the time, the LPNs were employees not supervisors. It would be ironic to deny enforcement of the Board's Order merely because the Home's egregious violations of the Act were perpetrated against individuals who subsequently were determined to be supervisors and thus not protected. Such a conclusion would violate the spirit of the Act. Thus, while

16

there is no precedent on this exact question, there are strong policy arguments that militate in favor of finding that the Board has jurisdiction to order reinstatement and backpay of supervisors in this type of situation. These policy reasons, considered in tandem with the well-settled rule that the Board has jurisdiction to reinstate supervisors in instances where their discharge was accomplished to thwart the exercise of rights of protected employees, could support a conclusion that the Board has jurisdiction to order reinstatement and backpay to supervisors under these circumstances. See, e.g., Oil City Brass Works v. NLRB, 357 F.2d 466, 471 (5th Cir. 1966) (ordering reinstatement of supervisor discharged for testifying before the Board on behalf of the union so as to ensure that "the overriding purpose of the Act [is not] frustrated.").

The Home engaged in deliberate conduct intended to discourage, prevent and punish union activity by those whom it believed were entitled to engage in such activity. If subsequent events fortuitously rendered those employees not subject to the protection of the Act, the intentional wrongful conduct of their employers should not be without remedy. However, because of our decision that the Home is barred from challenging the LPNs supervisory status in this appeal, we do not decide this issue.


IV.

For the foregoing reasons, we will deny review of the Board's Decision and grant enforcement of the Board's Order.


17