# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2920

_____

National Labor Relations Board,      *
                                      *

                Petitioner,      *

                                      *   On Application for Enforcement

      v.                        *   of an Order of the National

                                      *   Labor Relations Board.

St. Clair Die Casting, L.L.C.,      *

                                      *

                Respondent.     *

_____

Submitted: June 22, 2005
Filed: September 13, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Petitioner National Labor Relations Board (Board) seeks enforcement of its order that St. Clair Die Casting, L.L.C. (St. Clair) bargain with the union which won a representation election at its plant and furnish bargaining information. The order was based on the Board's findings that St. Clair committed unfair labor practices by refusing to meet and bargain after the union won the election by a vote of 71-51 and was certified as the exclusive collective bargaining representative. St. Clair contends that four supervisors were improperly included in the bargaining unit and that this affected the outcome of the election. We enforce the Board's order.

# I.

St. Clair is located in St. Clair, Missouri, and it manufactures custom aluminum and zinc die castings. On August 20, 2003, the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW (Union) filed a petition with the Board seeking to represent an employee unit in collective bargaining. The unit was composed of approximately 131 production, material handling, and maintenance employees at the plant. St. Clair opposed the petition, arguing that four setup specialists in the machine and finishing department should not be included in the unit because they were supervisors within the meaning of § 2(11) of the National Labor Relations Act (NLRA), 29 U.S.C. § 152(11).

A Board hearing officer held an evidentiary hearing on September 5, 2003, to determine the appropriateness of the unit and the status of the four setup specialists: Raymond Bay, James Price, Robert Sibole, and Harry Kroenlien. Two of the specialists were called as witnesses: Bay by St. Clair and Price by the Union. Bill Phillips, the coach or supervisor for the machine and finishing department, also testified for St. Clair, and it submitted a post hearing brief. The decision and direction of election, issued after the hearing by the Board's acting regional director, found that the four setup specialists were not supervisors as defined in § 2(11) of the NLRA, concluded that they were properly included in the voting unit, and directed that a secret ballot election be conducted to determine whether the employees wished to be represented by the Union.

St. Clair filed a request for review of the decision and direction of election, arguing that the acting regional director had erred by finding that the challenged employees were not supervisors and by including them in the voting unit. The Board decided that the request for review raised only one substantial issue, whether setup specialist Bay was a supervisor, and that the best way to resolve the issue would be "through the use of the Board's challenge procedure." The Board then amended the

decision and direction of election by the acting regional director to provide that Bay could vote under challenge in the representation election. One member of the three person Board disagreed and would have entirely denied the request for review.

The Board conducted the election at the St. Clair plant on October 9, 2003, to determine whether the employee unit wanted to be represented by the Union. The Union won the election by a vote of 71 to 51, and the acting regional director certified it as the exclusive bargaining representative for the employee unit. The unit was described as all "full-time and regular part-time production and maintenance employees, including material handling, quality, and tool room employees, team leaders, and setup specialists employed by the Employer at its St. Clair, Missouri facility, EXCLUDING temporary employees, office clerical and professional employees, guards and supervisors as defined in the Act." Challenges were made to the ballots of the four setup specialists and one other employee, but it is not disputed that under Board procedure such challenges need not be investigated before certification unless they are sufficient in number to affect the outcome of the election.

After the Union was certified, it requested that St. Clair furnish it with "data pertinent to these negotiations."[1] The requests were made in a series of letters to the

---

[1]The Union requested eleven categories of information: (1) A list of all hourly employees setting forth their date of hire, sex, age, and marital status, (2) Classifications and wage rates of all hourly employees, (3) Any bonus and/or merit increase(s) and information used to grant the same, (4) A copy of any insurance benefits ... along with the cost of each benefit per employee, per month to the company and to the individual employee, (5) A list of all fringe benefits that employees have at the present time ..., (6) Copy of company handbook covering practices and policies currently governing employees ..., (7) Copy of pension plan for hourly employees, (8) Annual Registration Statement identifying separated participants with different vested benefits, (9) Copy of profit sharing and 401(k) Plan, (10) Number of work shifts and the starting

company dated October 31, 2003, December 18, 2003, and January 14, 2004. St. Clair did not respond to the requests, and the Union filed an unfair labor practice charge alleging that it had violated §§ 8(a)(1) and (a)(5) of the NLRA. The Union also sent a letter to St. Clair on February 19, 2004, demanding that the company meet and bargain with it. The company refused to do so, and the Union filed another unfair labor practice charge, alleging that St. Clair also violated §§ 8(a)(1) and (a)(5) by refusing and failing to meet and bargain with the Union.

The cases were consolidated, and the Board's general counsel issued a complaint which included allegations that St. Clair's refusal to bargain and furnish information violated §§ 8(a)(1) and (a)(5). In its answer St. Clair admitted it had refused to furnish information and to bargain, but it argued that it was not required to do either because the bargaining unit improperly included one or more setup specialists who were supervisors under the statute. The general counsel moved for summary judgment and filed a brief in support, and the Board asked St. Clair to show cause why the motion should not be granted. St. Clair's response stated that it had not violated the NLRA because there were supervisors included in the bargaining unit.

The Board granted the motion for summary judgment, finding that St. Clair had violated §§ 8(a)(1) and (a)(5) of the NLRA by refusing to bargain with the Union and to furnish it with pertinent information and that all the issues raised by St. Clair were or could have been litigated during the earlier representation proceeding. The Board observed that the company had not offered to produce "any newly discovered and previously unavailable evidence, nor does it allege any special circumstances that would require the Board to reexamine the decision made in the representation proceeding." The Board rejected St. Clair's contention that the Union's certification was invalid, found that the bargaining unit was appropriate, and ordered St. Clair to

time of each shift, and (11) Brief explanation of the financial status, holdings, and a list of customers under contract.

bargain with the Union and furnish it with the requested information. The Board now seeks enforcement of this order.

## II.

St. Clair argues that the Board erred in upholding the acting regional director's conclusion that the four setup specialists were not supervisors under § 2(11) of the NLRA. It contends that the setup specialists used independent judgment in assigning tasks, in issuing secondary disciplinary forms, and in evaluating employees. According to St. Clair, it need not bargain with the Union because the bargaining unit includes supervisors. In support it cites 29 U.S.C. § 164(a), a section of the NLRA which states that "no employer ... shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law ... relating to collective bargaining"; Pony Express Courier Corp. v. NLRB, 981 F.2d 358, 364 (8th Cir. 1992) (citing § 164 and stating that employers are not required to bargain with unions that represent supervisors); and Waverly-Cedar Falls Health Care Ctr., Inc. v. NLRB, 933 F.2d 626, 628-29 (8th Cir. 1991) (same). It further contends that the inclusion of supervisors in the unit tainted the result of the election. St. Clair contends that it has never had the opportunity to litigate "substantial issues" with respect to the supervisory status of Bay and that the Board's order must be reversed and the case remanded.

The Board argues that St. Clair has failed to establish that any of the four setup specialists are supervisors within the meaning of the NLRA. It alternatively contends that even if the setup specialists were supervisors, its order should be enforced because the inclusion of the four specialists did not affect the outcome of the representation election. As to Bay's status, it points out that his vote had no impact on the election and that several procedural options had been available to St. Clair to resolve the question of his eligibility, such as negotiating with the Union or petitioning for unit clarification under § 102.60(b) of the Board's Rules and

Regulations. The Board also states in a Rule 28(j) letter submitted after oral argument that St. Clair could have raised any allegation of taint by objecting under § 102.69.[2] That provision allows a party to raise objections to the conduct of an election, or conduct affecting the results of the election, within seven days of the tally of ballots.

## A.

In § 10(a) of the NLRA Congress empowered the Board to prevent any person from engaging in any unfair labor practice affecting commerce. 29 U.S.C. § 160(a). Section 8(a)(1) of the NLRA provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce" employees in the exercise of their rights to organize and bargain collectively. 29 U.S.C. § 158(a)(1). Section 8(a)(5) provides that it is also an unfair labor practice for an employer to "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). In order to advance the bargaining process, an employer has an affirmative obligation to furnish the recognized employee representative with information it needs. NLRB v. Acme Indus. Co., 385 U.S. 432, 435-36 (1967).

Whenever the Board receives a charge that a person has engaged in unfair labor practices, the Board has the power to issue a complaint stating the charges and giving notice of a hearing. 29 U.S.C. § 160(b). If the Board finds any unfair labor practice, it must state its findings of fact and issue an order requiring the responsible party to cease and desist. 29 U.S.C. § 160(c). The Board may petition any federal court of appeals for enforcement of its order. 29 U.S.C. § 160(e).

---

[2]St. Clair asks that the Board's letter be stricken, but it can be considered as a citation of supplemental authority under Federal Rule of Appellate Procedure 28(j) responding to St. Clair's statement at oral argument that it had had no opportunity to present evidence of any taint which may have occurred after the evidentiary hearing but before the election.

Section 9 of the NLRA gives the Board the power to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings and determine whether a question of representation exists, and to direct an election or provide for secret ballots and certify the results. 29 U.S.C. § 159; see 29 C.F.R. § 101.21. In order to challenge the certification of a collective bargaining unit, an employer must refuse to recognize the union because certifications under § 9(c) of the NLRA are not reviewable as final orders of the Board. Waverly, 933 F.2d at 628. If a union files an unfair labor practice charge for refusal to bargain, the employer may then challenge the certification of the unit as an affirmative defense to the charges. Id. Review of the Board's certification decision is limited to a determination of whether the decision is arbitrary, capricious, an abuse of discretion, or lacking in substantial evidentiary support. Id. at 629.

B.

Section 2(3) of the NLRA, 29 U.S.C. § 152(3), excludes "any person employed as a supervisor" from the definition of the term "employee," and supervisors are not entitled to the protection of any law relating to collective bargaining. 29 U.S.C. § 164; see Beverly Enters. v. NLRB, 148 F.3d 1042, 1045 (8th Cir. 1998). Section 2(11) defines the term supervisor as

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

This statutory definition of supervisor has two components. First, a supervisor is someone who has authority to perform one of the listed functions even if the individual does not exercise it. Beverly Enters., 148 F.3d at 1045; Waverly, 933 F.2d at 629. Second, a supervisor has the type of authority which involves use of independent judgment and which is more than routine or clerical in nature. Beverly Enters., 148 F.3d at 1045. In limiting § 2(11) to employees who exercise independent judgment, Congress sought to distinguish between "'straw bosses, leadmen, *set-up men*, and other minor supervisory employees, on the one hand,'" (emphasis added), and supervisors vested with "'such genuine management prerogatives as the right to hire or fire, discipline, or make effective recommendations with respect to such action'" on the other. NLRB v. Bell Aerospace Co. Div. of Textron, Inc., 416 U.S. 267, 280-81 (1974) (quoting S. Rep. No. 80-105, at 4 (1947)).

The burden of proving supervisory status under the NLRA rests with the party asserting it. NLRB v. Kentucky River Cmty. Care, Inc., 532 U.S. 706, 711-12 (2001). Whether a particular employee is a supervisor is a factual question within the Board's special expertise, and its findings regarding supervisory status will be upheld as long as they are supported by substantial evidence on the record as a whole. Beverly Enters., 148 F.3d at 1045.

C.

The testimony at the representation hearing showed that the setup specialists at St. Clair assisted machine operators by setting up and programming machines for particular jobs and by making sure that the operators have the necessary materials to perform a task and move material to and from the machines during the shift. All of the setup specialists reported to Bill Phillips, the department's coach, and he testified that all of the setup specialists had the same duties and responsibilities. St. Clair's machine and finishing department operated twenty four hours per day with three shifts, and Phillips was at the facility daily until 5:00 or 6:00 p.m. He and two setup

specialists worked the first shift with a team leader and other employees who are classified either as operators or advanced operators. One setup specialist worked on the second and third shifts, but there was no coach or team leader present during these shifts.

St. Clair argues that the setup specialists were supervisors under § 2(11) of the NLRA because they exercised independent judgment in assigning tasks to other employees, but there was evidence at the representation hearing showing that the setup specialists did not have independent authority to assign operators their initial tasks or to prioritize the work to be done on the shift. Phillips prioritized the work assignments of the operators on all three shifts, and Bay testified he would call Phillips at home if he needed further direction. Although the setup specialists could assign employees to train other employees, training was a routine process within the department. St. Clair did not produce evidence establishing that the specialists used their independent judgment in assigning work, as opposed to following routine or standardized practices, so their assistance in assigning work did not make them supervisors under the NLRA. See Providence Alaska Medical Ctr. v. NLRB, 121 F.3d 548, 552-53 (9th Cir. 1997) (assignment of nurses at the beginning of each shift was routine activity done within the parameters of a set schedule and did not require independent judgment); Panaro and Grimes, 321 N.L.R.B. 811, 812 (1996) (individual who exercised supervisory authority only in routine, clerical, or perfunctory manner was not a supervisor).

St. Clair also contends that the setup specialists were supervisors under § 2(11) because they exercised independent judgment in disciplining other employees, pointing to Phillips' testimony that all of the setup specialists had authority to issue secondary disciplinary warning forms used to report employee rule violations. The testimony showed that Bay was the only setup specialist to have filled out or signed such a form, and Price, a setup specialist on the first shift, testified that he was not even aware the form existed. Moreover, the warning forms were not part of St. Clair's

formal disciplinary system; instead they were developed by Phillips solely for the use in the machine and finishing department. The forms did not automatically lead to formal discipline within the company, and Phillips testified that he had revoked a warning form in the past. The Board has stated that "'for the issuance of reprimands or warnings to constitute statutory supervisory authority, the warning must not only initiate, or be considered in determining future disciplinary action, but also it must be the basis of later personnel action without independent investigation or review by other supervisors.'" Waverly, 933 F.2d at 630 (quoting Passavant Health Center, 284 N.L.R.B. 887, 890 (1987)). It appears from the record here that the setup specialists were not an integral part of the disciplinary process, but that they reported infractions to Phillips who had discretion to decide how much weight to give the forms and when to issue formal discipline. See Beverly Enters., 148 F.3d at 1046 ("'The mere reporting of facts is not enough to make the reporter a supervisor.'") (quoting Highland Superstores, Inc. v. NLRB, 927 F.2d 918, 922 (6th Cir. 1991)). Participation by the specialists in secondary disciplinary warning forms did not establish that they were supervisors exercising independent judgment to discipline other employees.

According to St. Clair, the setup specialists exercised independent judgment in evaluating the work of other employees. The testimony showed that on several occasions Phillips asked Bay to rate employees from 1 to 5 in areas such as attitude, safety, quality, and absenteeism. Phillips would then discuss the form with Bay and fill out an evaluation form and sign it. The form would be presented to the employee, and Bay said that he was asked to sign the form as a witness. The authority to evaluate employees is not included in the listed functions of a supervisor in § 2(11) of the NLRA, however, and the Board has stated that the authority to evaluate employees without the authority to recommend specific personnel action is insufficient to confer supervisory status. Passavant Health Center, 284 N.L.R.B. 887, 891 (1987). Here, there were no evaluations by setup specialists which recommended any specific personnel action, and St. Clair has presented no evidence that any

evaluations by the specialists resulted in any such action. We conclude that substantial evidence supports the conclusion that the setup specialists' role in evaluating other employees was primarily one of reporting, and that did not make them supervisors under the NLRA. See Beverly Enters., 148 F.3d at 1046-47.

Setup specialists, like the other production and maintenance employees, were paid by the hour and received a paycheck each week. They received the same benefits and were subject to the same disciplinary procedures as others in the unit. They worked the same hours, had the same number of breaks and the same fifteen minute lunch period, and used the same break room and locker areas as the other production and maintenance employees working on the shift. They did not wear distinctive clothing, badges, or other insignia marking them as separate from other employees. In addition both Bay and Price testified that they had voted in a previous representation election in 1999. These factors support the Board's findings that the setup specialists were not supervisors.

We conclude that there is substantial evidence in the record to support the Board's finding that the bargaining unit was appropriate since the setup specialists did not exercise independent judgment in disciplining other employees or in assigning tasks and did not recommend personnel action in their evaluations.

Although there is substantial evidence in the record that setup specialist Bay was not a supervisor, St. Clair claims that the Board erred by failing to resolve "substantial issues" regarding his status. The Board was not required to undertake more detailed review, however, because Bay's status would not have affected the certification decision since the Union won the representation election by twenty votes and St. Clair could have petitioned the Board for unit clarification or negotiated with the Union over Bay's status. See Glen Manor Home for Jewish Aged v. NLRB, 474 F.2d 1145, 1150 (6th Cir. 1973) (no need to rule on supervisory status where inclusion in unit did not affect the outcome of the representation election).

St. Clair had the opportunity to present evidence at the representation proceeding to support its argument that all four setup specialists were supervisors, and it called witnesses of its own choosing. Setup specialist Bay and coach Phillips both testified for it at the representation hearing. As the Board stated in its decision, St. Clair failed to bring forward any newly discovered or previously unavailable evidence, and St. Clair identifies none at this point. We conclude that St. Clair has failed to establish its affirmative defense that it was not required to bargain with the Union because the employee unit was improperly certified.

St. Clair also argues that inclusion of the setup specialists in the unit tainted the results of the election because they allegedly had influence over other employees in the bargaining unit. A party challenging a representation election carries the heavy burden of proving that there were improprieties which interfered with employee free choice to such an extent that they materially affected the outcome of the election. Deffenbaugh Indus. v. NLRB, 122 F.3d 582, 586 (8th Cir. 1997). Although Board procedures would have allowed the company to raise this argument as a challenge to the results of the election within seven days of the tally of the vote under § 102.69 of the Board's Rules and Regulations, it did not and it offers no evidence of actual taint. We conclude St. Clair has also failed to meet its burden on this issue.

St. Clair conceded at oral argument that the information sought by the Union would likely be relevant bargaining information about employees in the bargaining unit if the Union had been properly certified. The type of information sought by the Union is presumptively relevant for purposes of collective bargaining. See e.g., Metro Health Foundation, Inc., 338 N.L.R.B. 802, 802-03 (2003); Maple View Manor, Inc., 320 N.L.R.B. 1149, 1151 (1996). Since St. Clair has not shown that the four setup specialists were improperly included in the bargaining unit or the Union was improperly certified, the company is obligated to bargain with the Union and furnish it with the requested information under §§ 8(a)(1) and (a)(5) of the NLRA.

III.

Having found no issues of material fact relating to the status of the setup specialists, the alleged taint in the election, or the bargaining information sought by the Union, we conclude the Board did not err by granting summary judgment. Since there is substantial evidence in the record to support the Board's finding that the bargaining unit was appropriate, we enforce its order.

_____